# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA

### Alexandria Division

| | |
|---|---|
| **S.A. CORP. dba VACUUMS UNLIMITED dba GO VACUUM, and CHANDER ANAND,** | Case No. 1: 15 -CU- 71 (GBR/TRJ) |
| Plaintiffs, | |
| v. | **COMPLAINT FOR DECLARATORY RELIEF AGAINST HARTFORD CASUALTY INSURANCE CO.** |
| **HARTFORD CASUALTY INSURANCE CO.,** | |
| Serve: registered agent CT Corporation System, 4701 Cox Road, Suite 285, Glen Allen, Virginia 23060, | |
| Defendant. | |

In this insurance coverage case, Plaintiffs S.A. Corp., Inc. ("S.A.") and Chander Anand ("Anand") seek a declaratory judgment that their general liability insurer, Defendant, Hartford Casualty Insurance Company, ("Hartford") has a duty to defend them. The underlying action against S.A. and Anad is named *Envirocare Technologies, LLC. v. Vacuums Unlimited, Inc., et al.*, in the Eastern District of New York, case number 2:14-cv-06501 (The *"Envirocare Action"*).

Envirocare's factual allegations in the underlying complaint potentially fall within Hartford's "personal and advertising injury" policy under two different provisions; under coverage for:

(1)    Offense (d): "oral or written publication, in any manner, of material that . . . disparages a person's or organization's goods, products or services" because Envirocare has alleged that S.A. and Anand engaged in marketing (Envirocare Compl., ¶ 6, ¶ 15, ¶ 20; Prayer ¶ A, ¶ B(i)), that harmed Envirocare's reputation, leading Envirocare customers to believe that the "inferior quality" vacuum bags sourced through Plaintiffs S.A. and Anand were from Envirocare as they bore the its trademark but were not the same "high quality" replacement vacuum bags, (Envirocare Compl., ¶ 6, ¶ 15, ¶ 20).

(2)    Offense (g): "infringement of . . . slogan in your 'advertisement'" because Envirocare has alleged that S.A. and Anand have used Envirocare's trademark (Envirocare Compl., ¶ 6, ¶ 15, ¶ 20), by advertising Envirocare's attention-getting, compound word-phrase, portmanteau, "Envirocare," to attract consumers to purchase environmentally friendly vacuum bags using the same phrase as the claimant to promote its vacuum bag products, (Envirocare Compl., ¶ 30).

The underlying Envirocare Action therefore falls within the "personal and advertising injury" coverage under offenses (d) and (g) as well as outside the scope of the policy's exclusion for intellectual property and other provisions. Plaintiffs seek a declaration from this court that Hartford is obligated to provide a defense to S.A. and Anand in the *Envirocare Action*.

## I.      THE PARTIES

1.      Plaintiff S.A. Corp. ("S.A.") is a corporation organized under the laws of the Commonwealth of Virginia with its principal place of business in Chantilly, Virginia. S.A. is a citizen of Virginia.

2.      Plaintiff, Chander Anand ("Anand") is an individual who has, at all relevant times, resided in Chantilly, Virginia.  He is a Virginia citizen.

3.      On information and belief, Defendant Hartford Casualty Insurance Company ("Hartford") is a corporation organized under the laws of the State of Indiana, licensed to sell insurance in the State of Virginia, with principal place of business in Connecticut. Hartford is a citizen of Indiana and Connecticut.

## II.     JURISDICTION

4.      This is an action for declaratory relief pursuant to 28 U.S.C. § 2201. This Court has jurisdiction over this action under 28 U.S.C. § 1332 because there is complete diversity of citizenship between Plaintiffs and Defendant and there is more than $75,000 in controversy in this action.

## III.    VENUE AND APPLICABLE LAW

5.      Venue is proper in this District and Division under 28 U.S.C. § 1391(a)(3) in that S.A. has its principal place of business in this District and Anand is a resident of Chantilly, Virginia, which is located in this District and Division.

6.      Hartford's policies covered S.A.'s and Anand's operations in Virginia, including in this District and Division.

7.      Hartford is authorized to and does issue insurance policies in Virginia, including in this District, and is subject to personal jurisdiction in this District and Division.

8.      On information and belief, Hartford sells, issues, and delivers insurance policies in Virginia and defends lawsuits in Virginia, including in this District and Division.

9.      Hartford sold, issued, and delivered its insurance policies to S.A. and Anand in this District and Division.

10.     This District and Division is the place of performance under the policy and Virginia law governs Hartford's obligations to S.A. and to Anand.

## IV.   PERTINENT FACTUAL ALLEGATIONS

### A.   The Hartford Policies

#### 1.     The Commercial General Liability Policies

11.     Hartford issued the policies to S.A., as the named insured, and Anand, as a defined insured. The Hartford policies cover executive officers of S.A. in the performance of their duties. The policies define the term "Executive officer." Chander Anand is the president of S.A. under the corporation's charter. (CGL, Ex. 1, (G9)). Chander Anand is an "executive officer" of S.A. (CGL, Ex. 1, § c1 (d)). The Hartford primary Commercial General Liability Policies, number 35SBAPE4835, were issued for the periods of 5/10/11-5/10/12 ("Year 1"); 5/10/12-5/10/13 ("Year 2"); 5/10/13-5/10/14 ("Year 3"); and 5/10/14-5/10/15 ("Year 4"). A copy of pertinent sections of the 2011-12 policy issued in "Year 1" is attached to this complaint and is hereby incorporated by reference as **Exhibit "1."**

12.     Hartford's policy language for the four referenced years remained the same with the exception of its addition of an "Amendment of Exclusions and Definition — Personal and Advertising Injury" (the "PAIA Endorsment"), form no. SS 41 62 06 11 and the Cyberflex Endorsement, form no. SS 40 26 06 11, which commenced in "Year 2" and continued in "Year 3" and "Year 4."

13.     Hartford's Policies state:

### A. COVERAGES

#### 1. BUSINESS LIABILITY COVERAGE (BODILY INJURY, PROPERTY DAMAGE, PERSONAL AND ADVERTISING INJURY)

**Insuring Agreement**

a.   We will pay those sums that the insured becomes legally obligated to pay as damages because of . . . "personal and advertising injury" to which this insurance applies. . . .

\* \* \*

"Personal and advertising injury" means:

[I]njury including consequential "bodily injury", arising out of one or more of the following offenses. . . .

   d.  Oral, written or electronic publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services; . . .

. . . .

   g.  Infringement of copyright, slogan, or title of any literary or artistic work, in your "advertisement"

\* \* \*

"Advertisement" means the widespread public dissemination of information or images that has the purpose of inducing sale of goods, products or services through:

. . . .

   b.  The Internet, but only as that part of the website that is about goods, products, or services for the purposes of inducing the sale of goods, products or services; or

   c.  Any other widespread public distribution.

\* \* \*

B.  Exclusions
1.  Applicable to Business Liability Coverage

This insurance does not apply to: . . .

   p.  Personal and Advertising Injury

"Personal and advertising injury":

   (1)  Arising out of oral, written or electronic publication of material, if done by or at the direction of the insured with knowledge of its falsity;

   (2)  Arising out of oral, written, or electronic publication of material whose first publication took place before the beginning of the policy period; . . .

   (5)  Arising out of failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement."; . . .

   (7)  Arising out of any violation of any intellectual property rights such as copyright, patent, trademark, trade name, trade secret, service mark, or other designation of origin or authenticity.

However, this exclusion does not apply to infringement, in your "advertisement", of

. . . .

   (b)  Slogan, unless the slogan is also a trademark, trade name, service mark or other designation of origin or authenticity. . . .

**2.**    **The Cyberflex Endorsement (Year 1)**

B. Section G. – LIABILITY AND MEDICAL EXPENSES DEFINITIONS is

amended as follows:

1. Paragraph b. of definition 1. "advertisement" is deleted and replaced by: "Advertisement" means the widespread public dissemination of information or images that has the purpose of inducing the sale of goods, products or services through:

    b.  The Internet;

2. Paragraphs f. and g. of the definition of "personal and advertising injury" are deleted and replaced by the following: "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

. . . .

    g.  Infringement of copyright, slogan, or title of any literary or artistic work, in your "advertisement" or on "your website"; or

. . . .

4. The following definition is added: "Your web site" means a web page or set of interconnected web pages prepared and maintained by you, or by others on your behalf, for the purposes of promoting your goods or services, that is accessible over a computer network.

. . . .

A. Exclusion 1.p. "Personal and Advertising Injury" (Section B. – EXCLUSIONS) is modified as follows:

1. Paragraphs . . . (7) [is] deleted and replaced by the following:

. . . .

    (7)  Arising out of any violation of any intellectual property rights, such as copyright, patent, trademark, trade name, trade secret, service mark or other designation of origin or authenticity.

    However this exclusion does not apply to infringement, in your "advertisement" or on "your web site", of

    (a)  . . . .
        (ii)      Slogan, unless the slogan is also a trademark, trade name, service mark or other designation of origin or authenticity . . . .

**3.      The Cyberflex Endorsement (Years 2-4)**

1. Paragraph b. of definition 1. "advertisement" is deleted and replaced by: "Advertisement" means the widespread public dissemination of information or images that has the purpose of inducing the sale of goods, products or services through:

    b.  The Internet;

2. Paragraphs f. and g. of the definition of "personal and advertising injury" are deleted and replaced by the following: "Personal and advertising injury" means injury including consequential "bodily injury", arising out of one or more of the following offenses:

. . . .

    g.  Infringement of copyright, slogan, or title of any literary or artistic work, in your "advertisement" or on "your website"; or

. . . .

4. The following definition is added: "Your web site" means a web page or set of interconnected web pages prepared and

maintained by you, or by others on your behalf, for the purposes of promoting your goods or services, that is accessible over a computer network.

. . . .

A. Exclusion 1.p. "Personal and Advertising Injury"

(Section B. – EXCLUSIONS is modified as follows:

1. Paragraphs . . . (7) [is] deleted and replaced by the following:

. . . .

(7) (a) Arising out of any violation of any actual or alleged infringement or violation of intellectual property rights, such as copyright, patent, trademark, trade name, trade secret, service mark or other designation of origin or authenticity.

(b) Any injury or damage alleged in any claim or "suit" that also alleges an infringement or violation of any intellectual property right, whether such allegation or infringement or violation is made by you or by any other party involved in the claim or "suit", regardless of whether this insurance would otherwise apply.

However this exclusion does not apply to infringement, in your "advertisement" or on "your web site", of

(a) . . . .
(ii)     Slogan. . . .

**4.   "Amendment of Exclusions and Definition—Personal and Advertising Injury" (Years 2-4)**

A. Subparagraph 1.p (7), (8), (15) of Paragraph 2., of Section B. Exclusions is deleted and replaced with the following:

p. Personal and Advertising Injury:

(7) (a) arising out of any actual or alleged infringement or violation of any intellectual property right, such as copyright, patent, trademark, trade name, trade secret, service mark or other designation of origin or authenticity; or

(b) Any injury or damage alleged in any claim or "suit" that also alleges an infringement or violation of any intellectual property right, whether such allegation of infringement of violation is made by you or by any other party involved in the claim or "suit", regardless of whether this insurance would otherwise apply.

However, this exclusion does not apply if the only allegation in the claim or "suit" involving any intellectual property right is limited to:

(1) Infringement, in your "advertisement", of:
(a)       . . . .
(b)       Slogan . . . .

### B.   The Underlying Envirocare Action

14.   On or about November 4, 2014, Envirocare Technologies LLC filed a complaint against S.A. and Anand ("*Envirocare Action*"). A copy of the *Envirocare Action* is attached as **Exhibit "2"**.

15.   The *Envirocare Action* states claims against S.A. and Anand that trigger Hartford's duty to defend under Hartford's policies as the wrongful conduct alleged by Envirocare in the *Envirocare Action* potentially occurred within one or more of Hartford's policy periods. The complaint in the *Envirocare Action* includes three potentially covered counts:   **Count II**: Federal Common Law Unfair Competition under 15 U.S.C. § 1125; **Count III**: Common Law Unfair Competition Under the Laws of the State of New York; and **Count IV**: Unfair Competition Under the Statutes of the State of New York." Each of these claims are subject to a three year statute of limitations, so that only conduct after 11/04/11 could create liability that would lead to covered damages.

### C.   Notice to Hartford of the *Envirocare Action*

16.   S.A. and Anand provided notice of the *Envirocare Action* shortly following the service of the complaint and Keith Morrison of Hartford's General Liability Claim Center was assigned as the Hartford's agent.

17.   Hartford acknowledged S.A.'s and Anad's notice on December 22, 2014. Although S.A. and Anand gave prompt notice of the *Envirocare Action* to Hartford and requested a defense, Hartford failed to promptly recognize its duty to defend, despite the Plaintiffs' imminent duty to respond in the *Envirocare Action*.

## V.   POTENTIAL COVERAGE ARISES UNDER OFFESES (d) AND (g)

### A.   Publication Of Disparaging Material

#### 1.   The Three Part Test

18.   Hartford's "Personal and Advertising Injury" coverage provides coverage for "Oral, written or electronic publication of material that . . . disparages a person or organization's goods, products or services."

19.   The policy language presents a three-part test for coverage: (1) publication of material;

(2) that disparages; and (3) an organization's goods, products, or services.

### 2.   Element One

20.    Envirocare has alleged publication by alleging harm that resulted from S.A.'s and Anand's advertising, marketing, and/or solicitation. (*Envirocare* compl., Ex. 2, ¶ 6, ¶ 15, ¶ 20), Prayer ¶A).

21.    The policy does not define "publication" or set forth a minimum number of recipients, therefore, "publication" must be given its plain meaning. "Publication" is defined in the dictionary as "the state or fact of being published." The Random House Unabridged Dictionary 1563 (2d. Ed. 1993). To "publish" means "to communicate to some person or persons other than the person defamed." The Random House Unabridged Dictionary 1563 (2d. Ed. 1993).

22.    Although publication only requires the disparaging comment be communicated to one person, *widespread* publication of the disparaging materials is expressly alleged in the allegations of the *Envirocare Action.*

23.    Envirocare concluded that, "**Envirocare markets a line of high-quality replacement vacuum bags** in the United States. Upon information and belief, **the products of Defendant are of inferior quality.**" (*Envirocare* Compl., Ex. 2, ¶18) (emphasis added).

24.    Envirocare has alleged that S.A. and Anand's harm was caused by the publication by alleging that "Defendants . . . intend that the marketing . . . of The Infringing Products . . . **harm the business reputation of Envirocare. . . .**" (Envirocare Compl., Ex. 2, ¶ 20) (emphasis added).

25.    Additionally, Envirocare's prayer for relief seeks to enjoin the S.A.'s and Anand's "advertising or promoting" activities, (Envirocare Compl., Ex. 2, Prayer ¶ A), and seeks to have S.A. and Anand "remove all internet listings using the Envirocare name, or Images of Envirocare products" (*Envirocare* Compl., Ex. 2, Prayer ¶ B(i)).

26.    From these allegations it is reasonable to infer that S.A. and Anand communicated to some person, or persons, statements that disparaged Envirocare to consumers and the public-at-large and that the harm experienced by Envirocare was a result of that communication, such that there was a publication of material that disparaged Envirocare.

27.    Because Envirocare has alleged that its harm results from S.A.'s and Anand's advertising,

marketing, and/or solicitation, it has pled publication.

### 3. Element Two

28.   Disparagement, undefined in the policy, is defined by Black's Law Dictionary as:

1.   A derogatory comparison of one thing with another. . . .

2.   The act or an instance of castigating or detracting from the reputation of, esp. unfairly or untruthfully. . . .

3.   A false and injurous statement that discredits or detracts from the reputation of another's character, property, product, or business. . . .

4.   Reproach, disgrace, or indignity. . . .

29.   Envirocare has alleged that the publication was disparaging, by pleading that S.A.'s and Anand's "acts tend to falsely associate the source of the merchandise of the Defendants with Envirocare." (*Envirocare* Compl. Ex. 2, ¶ 21). Envirocare alleged that "Envirocare markets a line of high-quality . . . . vacuum bags" and that "the products of Defendant are of inferior quality." (*Envirocare* Compl. Ex. 2, ¶ 18). Defendant's "marketing . . . of The Infringing Products . . . harm[ed] the business reputation of Envirocare. . . ." (*Envirocare* compl., Ex. 2, ¶ 20). Envirocare essentially alleges that by marketing inferior products with "EnviroCare," S.A. and Anand have harmed the reputation of Envirocare's goods, products, and services.

30.   Acts or instances that harm business reputation are within the core of the definition of "disparagement."

31.   Disparagement of a business reputation necessarily disparages that company's goods, products, and services.

32.   For these reasons, Envirocare's allegations evidence "publication of material that . . . disparages a person or organization's goods, products or services."

### 4. Element Three

33.   S.A.'s publications regarding Envirocare's labed products allegedly caused consumers to perceive that the allegedly inferior products were sourced from Envirocare rather than Plaintiffs.

34.   Envirocare has explicitly stated injury to its products by alleging that: ". . . **The**

**Infringing Products under the Envirocare Name is intended to** trade-off and/or **harm the business reputation of Envirocare within this judicial district deliberately."** (*Envirocare* Compl., Ex. 2, ¶20 (emphasis added)).

### B.      Infringement Of Slogan In Your "Advertisement"

#### 1.      The Three Part Test

35.      Hartford's policy provides coverage for offense (g): "[i]nfringement of . . . slogan . . . in your 'advertisement'."

36.      The policy language presents a three-part test for coverage:   (1) Infringement of (2) slogan (3) in your "advertisement."

#### 2.      Element One

37.      Because Envirocare has pled that it will be harmed by S.A.'s and Anand's marketing using Envirocare's trademark, "Envirocare" (just as Nike would be harmed by another company's use of "Just Do it" in advertising inferior quality goods) and because "Envirocare" is a portmanteau slogan like "Thinnovation" or "Imaginate," Envirocare has stated an implicit claim for Infringement of Slogan, which is covered by S.A.'s Hartford policy.

38.      Specifically, in alleging infringement of slogan, Envirocare has alleged, "the **EnviroCare trademark has come to symbolize the reputation and good will of the plaintiff,** Envirocare." (*Envirocare* Compl., Ex. 1, ¶17 (emphasis added)); "**Defendants** are fully aware that their aforesaid **acts tend to falsely identify and falsely associate the source of the merchandise of the Defendants with Envirocare. . . .**" (*Envirocare* Compl. Ex. 2, ¶21 (emphasis added)).

#### 3.      Element Two

39.      The word "slogan" is undefined in the policy.  Slogan is "a distinctive cry, phrase, or motto of any party, group, manufacturer, or person; catchword or catch phrase."

40.      A slogan includes, but is not limited to:

(a)      a singular word, *e.g.,* IBM: *Think*, 3M: *Innovation*, Coca-Cola: *Real*, Kaiser Permanente:

*Thrive*, Samsung: *Imagine*, NEXTEL: *Done*, Barak Obama (2012): *Forward*.;

(b)    a continuous phrase, *e.g.,* Nike: *Just do it*, McDonald's: *I'm lovin' it*.;

(c)    a disjointed phrase, *e.g.,* Air France: *New. Fast. Efficient.*; Wrangler: *Real. Comfortable. Jeans.;*

(d)    a name, e.g., *Geronimo!*, *WOW!*, http://www.wowway.com/home-map.;

(e)    an abbreviation, *e.g.,* Y.O.L.O.! (an abbreviation for You Only Live Once).;

(f)    a product name, *e.g.,* Playstation: *Playstation* (heard at the end of each playstation commercial in a high-pitched digitized voice, the slogan is both the name of the company, "Playstation," and the imperative, "play station").;

(g)    or a portmanteau, *e.g.,* Michael's: *Imaginate* (a combination of "imagine" and "create" or "fabricate"), Burger King: *Satisfries* (a combination of "satisfied" and "fries"), Mac Book Air: *Thinnovate* (a combination of "thin" and "innovate"), Robitussin: *Don't Suffer the Cough-equences.;*

41.    Envirocare's trademark, "EnviroCare" is a slogan used by Envirocare, within the plain meaning of the word "slogan."

42.    The two capital letters in seen the printout of Envirocare's trademark, attached as Exhibit A to the *Envirocare* complaint, (Ex. 2), reveal that the Envirocare trademark is a "portmanteau" of the words "Environment" and "Care" or of the phrase "Enviromental Care." Envirocare has alleged that it has done substantial marketing using the Envirocare trademark, and that Envirocare has become distinctive. (*See Envirocare* Compl., Ex. 2, ¶ 12, ¶ 17).

43.    "EnviroCare" is therefore a distinctive cry, phrase, or motto, catchword or catch phrase of Envirocare Technologies LLC, used to market its vacuum products. Just as 3M's "Innovation" slogan gives the public a sense of cutting edge inventions, so too does "EnviroCare" give the public a sense that by using the vacuum products they will be specially caring for their own home environment. In this way, Envirocare's mark, "EnviroCare" is as much of a slogan as 3M's "Innovation" or Macbook Air's "Thinnovate" or Nike's "Just Do It."

### 4.  Element Three

44.     As defined in the policy, "advertisement" means the "widespread public dissemination of information or images that has the purpose of inducing the sale of goods, products, or services . . ."

45.     Thus "in your 'advertisement'" means "in your widespread public dissemination of information or images that has the purpose of inducing sale of goods, products, or services."

46.     Envirocare has alleged that, ". . . **Defendants** Go Vacuum and Bill Anand (collectively hereinafter "the Defendants") **engages in the marketing and solicitation of accessories for vacuum cleaners . . . .**" (*Envirocare* Compl., Ex. 2, ¶ 6)) and **"have been advertising and offering for sale on the internet, . . ."** (*Envirocare* Compl., Ex. 2, ¶ 15) so that **"[a]s a result of the marketing by the Defendants** of comparable products using the Envirocare name, **the reputation of Envirocare has been misappropriated."** (*Envirocare* Compl. Ex. 2, ¶30 emphasis added)).

47.     Envirocare has alleged that its damages come from S.A.'s and Anand's advertising, (*See Envirocare* Compl. ¶ 6, ¶ 15, ¶ 30.). These allegations satisfy the "in your 'advertisement'" prong of the coverage analysis.

48.     Therefore, because "EnviroCare" is a slogan, and Evirocare has alleged "infringement of that slogan in [S.A.'s and Anand's] 'advertising'," Envirocare alleged facts giving rise to Hartford's duty to defend, based on offense (g): "infringement of slogan in your 'advertisement'."

## VI.  NO EXCLUSIONS BAR COVERAGE

### A.  Hartford's Exclusions Are Narrowly Construed And Do Not Bar A Defense Here

49.     Hartford is relieved of its duty to defend if and only if the claims set forth in Envirocare's complaint against the Plaintiffs alleges harm not covered under the policy. Hartford has the burden of showing that the allegations cast the pleading solely and entirely within the policy exclusions because its duty to defend is triggered by the mere *possibility* of a covered liability.

50.     If coverage is in doubt, the insurance company must defend.

51.     None of Hartford's policy exclusions bar potential coverage for "Personal and Advertising Injury."

**B.     Hartford's Intellectual Property Exclusion Endorsements Do Not Bar A Defense**

    **1.     Hartford's Cyberflex Endorsement (Year 1)**
        **(Applicable Coverage for Offense (d))**

52.     The Cyberflex Endorsement, Form No. SS 40 26 04 05, in effect for Year 1, reads:

    A. Exclusion 1.p. "Personal and Advertising Injury" (Section B. – EXCLUSIONS) is
    modified as follows:

        1. Paragraphs . . . (7) [is] deleted and replaced by the following:
    . . . .

            (7) Arising out of any violation of any intellectual property rights, such as
                copyright, patent, trademark, trade name, trade secret, service mark or
                other designation of origin or authenticity.

            However this exclusion does not apply to infringement, in your
            "advertisement" or on "your web site", of

            (a) . . . .
                (ii)     Slogan, unless the slogan is also a trademark, trade name, service
                mark or other designation of origin or authenticity . . . .

53.     No coverage for offense (g): "infringement of slogan in your 'advertisement'" is claimed
for "Year 1."

54.     Offense (d): "publication of disparaging material" is not a claim "arising out of any
violation of . . . infringement or violation of intellectual property rights." Rather, it asserts a publication
that harms a reputation of a competitor in a matter wholly independent of the competitor's intellectual
property rights.

    **2.     Hartford's Cyberflex Endorsement (Years 2-4)**
        **(Applicable to Offenses (d) and (g))**

55.     The Cyberflex Endorsement, Form No. SS 40 26 06 11 reads:

    A. Exclusion 1.p. "Personal and Advertising Injury"

    (Section B. – EXCLUSIONS) is modified as follows:

        1. Paragraphs (4), (5), and (7) are deleted and replaced by the following: . . .

            (7) (a) Arising out of any violation of any actual or alleged infringement or
                violation of intellectual property rights, such as copyright, patent,
                trademark, trade name, trade secret, service mark or other designation of
                origin or authenticity.

(b) Any injury or damage alleged in any claim or "suit" that also alleges an infringement or violation of any intellectual property right, whether such allegation or infringement or violation is made by you or by any other party involved in the claim or "suit", regardless of whether this insurance would otherwise apply.

However this exclusion does not apply to infringement, in your "advertisement" or on "your web site", of

(a) . . .
   (ii)      Slogan; . . .

56.     The language of the Cyberflex Endorsement replaced the original policy language. Pursuant to its provisions, "infringement of slogan in your 'advertisement'" is an express exception to the policy's Intellectual Property coverage exclusion, which includes trademark infringement.   As the *Envirocare* slogan was trademarked, the Cyberflex endorsement redefines the intellectual property exclusion such that infringement of trademarked slogans is covered.

57.     "Publication of disparaging material" is not a claim "arising out of any violation of . . . infringement or violation of intellectual property rights." Rather, it asserts a publication that harms a competitor's reputation in a matter wholly independent of the competitor's intellectual property rights.

58.     The "publication of disparaging material" does not assert distinct liability that is dependent on the public's perception that Envirocare's products are sourced from Envirocare rather than S.A., but rather, the perception that products that are allegedly inferior are sourced from Envirocare rather than S.A., as Envirocare alleges. Such claims do not fall within the scope of any intellectual property exclusion, as they do not involve an assertion of "other designation of origin or authenticity" as the alleged wrongful conduct is, in fact, Plaintiffs' alleged substitution of inferior products for those sourced from Envirocare.

### 3.      "Amendment of Exclusions and Definition" (Years 2-4)

59.     The "Amendment of Exclusions and Definition—Personal and Advertising Injury" (the "PAIA Endorsement") issued on Form No. SS 41 62 06 11, reads:

A. Subparagraph 1.p (7), (8), (15) of Paragraph 2., of Section B. Exclusions is deleted and replaced with the following:

p.   Personal and Advertising Injury:

(7) (a) arising out of any actual or alleged infringement or violation of any intellectual property right, such as copyright, patent, trademark, trade name, trade secret, service mark or other designation of origin or authenticity; or

(b) Any injury or damage alleged in any claim or "suit" that also alleges an infringement or violation of any intellectual property right, whether such allegation of infringement of violation is made by you or by any other party involved in the claim or "suit", regardless of whether this insurance would otherwise apply.

However, this exclusion does not apply if the only allegation in the claim or "suit" involving any intellectual property right is limited to:

(1) Infringement, in your "advertisement", of:

\* \* \*

(b)　　Slogan. . . .

60.　　Pursuant to the PAIA Endorsement, intellectual property claims such as those for trademark infringement are not excluded where they, as here, fall within the "infringement of slogan in your 'advertisement'" exception to that exclusion.

61.　　The exception to the PAIA Endorsement is factually implicated as a trademarked slogan is factually asserted and falls within an express exception to the trademark exclusion.

62.　　Because the PAIA Endorsement was issued simultaneously with the Cyberflex Endorsement, without assigning priority vis-à-vis the Cyberflex Endorsement, any potential inconsistency between the two policies must be interpreted against Hartford. Here, they both reinforce that offense (g) "infringement of slogan in your 'advertisement'" is an express exception to Hartford's Intellectual Property exclusion as articulated by both the Year "2-4" Cyberflex Endorsement and the PAIA Endorsement.

63.　　So too, no claims for "publication of disparagement" constitute claims "arising out of" the infringement or violation of intellectual property exclusion.

**4.　　Inapplicability of PAIA Amendment and Cyberflex Endorsement in Years 2-4 to Bar Coverage for Offense (d) "Publication of Disparaging Material"**

64.　　Both the Cyberflex Endorsement and PAIA Amendment first introduced by Hartford in Year 2 contain policy language that purports to exclude "any injury or damage alleged in any claim or

suit that also alleges an infringement or violation of any intellectual property right." That provision, however, is buried in a half sentence that does not properly notify any insured, much less Plaintiffs here, of the significant reduction in coverage it purportedly creates.  There is no reference in the "Personal and Advertising Injury" Definitions section, or elsewhere, that the offense of "publication of disparaging material" will be eliminated in the fortuitous circumstance that any excluded intellectual property claim is also asserted against an insured.  Adopting such a policy construction would eliminate the potential coverage for expressly identified offenses, such as offense (d), without any express notice to the insured about the significant reduction in coverage referenced  either in the Definitions section or the policy's intellectual property exclusion.

65.    Moreover, effecting such a change by an "amendment" or "endorsement" not described as an exclusion, which else purport to broaden coverage in some respects, is misleading.  The practice of providing policyholders with pages and pages of provisions that may or may not be in force, depending on what endorsements apply, is not to be commended.  Given current technology, there would appear to be little practical impediment to preparing customized policy documents for each policyholder that either omit deleted verbage or plainly identify it as having been removed by endorsement.

66.    Precisely this lack of notice was found problematic by a federal district court in Virginia and affirmed by the Fourth Circuit.  It concluded that both the original policy and any extended coverage per the endorsement at issue there with similar limiting language was equally available to the insured despite the "that also alleges" provision in that policy's endorsement.

C.    **First Publication Exclusion**

67.    Hartford's policies contain a "first publication exclusion." The exclusion reads:

> This insurance does not apply to: . . .
>
> p.  Personal and Advertising Injury
>
> "Personal and advertising injury":
>
> (2) Arising out of oral, written, or electronic publication of material whose first publication took place before the beginning of the policy period; . . .

68.    It is unclear from the face of the complaint in the *Envirocare Action*, when the alleged

"publication of disparaging material" (offense (d)) or "infringement of slogan in your 'advertisement'" (offense (g)) was first published.

69.     Virginia law requires Hartford to defend the insured unless it clearly appears from the initial pleading that the insurer would not be liable under the policy contract for *any* judgment based on the allegations. As the "first publication" exclusion incorporates the "personal and advertising injury" coverage, which requires "injury arising out of" an enumerated offense; such as (d) or (g) herein, only injurious conduct that post-dates Hartford's Year 1 policy period after 11/04/11 can trigger a defense.

70.     As coverage is only sought in Year "2-4" under offense (g) and for year "1-4" for offense (d), the conduct alleged could have arisen in a manner that would render Plaintiffs liable outside the scope of the "first publication" exclusion.

71.     The duty to defend arises whenever the complaint in the underlying action alleges facts and circumstances *some* of which, if proved, would fall within the risk covered by the policy. The complaint in the *Envirocare Action* does not state a time that the allegedly disparaging material was published or for when the slogan "EnviroCare" was allegedly used in Plaintiffs advertisements.

72.     The "publication of the disparaging material," as well as the date for the first injurious use of the Envirocare's slogan in Plaintiffs' advertisement was first published within "Year 1" of Hartford's policy.

73.     Hartford cannot establish that the material first published, that potentially disparaged Envirocare, preceded the inception of its "Year 1" of its policy period, nor that any injurious "infringement of slogan [in Plaintiffs'] 'advertisement'" arose before Hartford's Year "2-4" policies.

D.     **Publication of Material with Knowledge of Its Falsity Exclusion**

74.     Hartford's policies contain an exclusion for the "publication of material with the knowledge of its falsity." The exclusion reads:

> This insurance does not apply to: . . .
>
> p.  Personal and Advertising Injury
>
> "Personal and advertising injury":
>
> (1) Arising out of oral, written or electronic publication of material, if done

by or at the direction of the insured with knowledge of its falsity;

75.    In the *Envirocare Action*, Envirocare's recovery of damages for "infringement of its [trademarked] slogan in Plaintiffs' 'advertisement'" may occur even if all claimants can establish that the infringement was entirely innocent. "Infringement of slogan" does not require a "knowing" state of mind, nor is "falsity" part of the proof requirement. Both Plaintiffs' product and Envirocare's product use the slogan "EnviroCare," and by proving likelihood of confusion and priority of use, Envirocare could prevail under the trademark infringement and/or the unfair competition counts.

76.    Envirocare can prevail on a claim for "publication of disparaging material" even if S.A. and Anand did not know that their claims were false under any of the asserted unfair competition counts.

77.    For these reasons, the exclusion for "publication of material with the knowledge of its falsity" does not bar a defense.

### E.    Failure to Conform Exclusion

78.    Hartford's policies contain an exclusion for "failure to conform." The exclusion reads:

> This insurance does not apply to: . . .
>
> p.  Personal and Advertising Injury
>
> "Personal and advertising injury":
>
> (5) Arising out of failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement."; . . .

79.    The exclusion for "failure to conform" excludes some claims for false advertising, where an express statement of "quality" or "performance" is at issue. It is directed to the failure of goods, not the failure of advertising. It is applicable only where Plaintiffs made affirmative false statements about the "quality" or "performance" of their goods, products, or services, *e.g.*, advertising that your product was "made of durable titanium" when in fact it was made of plastic.

80.    In the *Envirocare Action*, Envirocare does not allege that S.A. or Anand made any affirmative statements about the "quality" or "performance" of their products or services, much less

statements that were false or evidenced a failure of Plaintiff's products, to conform to any express representation about their "quality" or "performance."

81.    For these reasons, the exclusion for "failure to conform" does not apply.

## VII.    FIRST CAUSE OF ACTION—DECLARATORY RELIEF (DUTY TO DEFEND).

82.    S.A. and Anand incorporate the allegations in the above paragraphs of this Complaint as though fully alleged herein.

83.    Valid contracts, in the form of the referenced policies, existed between S.A. and Anad and Hartford.

84.    S.A. and Anand fully performed all of the obligations and conditions to be performed by them under the policies or have been excused from performing as a result of Hartford's breach of its duty to defend.

85.    By selling the policies, Hartford agreed to provide a defense for suits seeking damages for "personal and advertising injury" offenses as defined in its policies.

86.    The complaint in the underlying *Envirocare Action* alleges facts potentially implicating coverage under the policies' "personal and advertising injury" coverage, thereby triggering Hartford's obligation to defend S.A. and Anand in the *Envirocare Action*.

87.    Hartford has wrongfully denied coverage and the potential for coverage of the *Envirocare Action* under its policies benefiting S.A. and Anand.

88.    An actual controversy exists between S.A., Anand, and Hartford that requires judicial declaration by this Court of the parties' rights and duties regarding the potential for coverage under the policies, Hartford's duty to defend S.A. and Anand in the *Envirocare Action*, and the amount of defense expenses owed by Hartford.

## VIII.    PRAYER FOR RELIEF

WHEREFORE, Plaintiffs S.A. and Anand pray for judgment against Defendant Hartford as follows:

A.    A declaration that Hartford has a duty to defend S.A. and Anand in the *Envirocare Action*

under the Policies it issued to S.A.;

     B.     Pre-judgment interest accruing from the date of each defense invoice and settlement payment at the statutory interest rate of 6% per annum;

     C.     Costs;

     D.     Any other relief as this Court may deem just and proper.

Dated:   January 15, 2015

                                    Respectfully submitted,

                                    S.A. CORP., INC. and CHANDER ANAND

                                    By: _____

                                        John J. Rasmussen

                                    Virginia State Bar No. 45787
                                    INSURANCE RECOVERY LAW GROUP, PLC
                                    P. O. Box 8049
                                    Richmond, VA  23223-0049
                                    804.308.1359
                                    804.308.1349 Facsimile
                                    jjr@insurance-recovery.com

                                    Counsel for Plaintiffs
                                    S.A. CORP., INC. and CHANDER ANAND