**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**ALEXANDRIA DIVISION**

| | | |
|---|---|---|
| S.A. Corp., d/b/a/ Vacuums Unlimited d/b/a Go Vacuum, and Chander Anand, | ) ) ) | |
| Plaintiffs, | ) ) | Case No. 1:15-cv-00071-GBL-TRJ |
| v. | ) ) | |
| Hartford Casualty Insurance Company, | ) ) | |
| Defendant. | ) ) | |

**DEFENDANT'S RESPONSE TO PLAINTIFFS'**
**MOTION FOR PARTIAL SUMMARY JUDGMENT**

Defendant Hartford Casualty Company ("Hartford"), by and through its attorneys, hereby submits this response to Plaintiffs' Motion for Partial Summary Judgment (Dkt. No. 5) ("Plaintiffs' Motion"). Plaintiffs' Motion repeats the same arguments set forth in their First Amended Complaint (the "Complaint"), and those arguments fail for the reasons explained in Hartford's Memorandum of Law in Support of Defendant's Motion to Dismiss Under Rule 12(b)(6) or, in the Alternative, for Summary Judgment (Dkt. No. 12) ("Hartford's Motion"). The Envirocare Action is a straightforward trademark infringement suit, despite Plaintiffs' efforts to characterize it differently. It alleges no "personal and advertising injury" as defined by the Policies and is barred from coverage in any event by the Intellectual Property Exclusion.

## I.     MATERIAL FACTS

Hartford does not dispute the underlying facts set forth in Plaintiffs' Motion, except to the extent that Plaintiffs allege Hartford owes them a defense in the Envirocare Action. *See* Dkt. No. 9 at 5-6. As explained further below, the Envirocare Action does not allege any injury within the scope of coverage of the Policies, and is barred from coverage in any event by the

Intellectual Property Exclusion.  Hartford's own statement of undisputed material facts is set forth in Hartford's Motion.  *See* Dkt. No. 12 at 2-6.

## II.    ARGUMENT

### A.    ENVIROCARE DOES NOT ALLEGE PRODUCT DISPARAGEMENT

The Fourth Circuit has made clear that straightforward trademark infringement allegations do not give rise to a claim for "product disparagement."  *See Superformance Int'l Inc. v. Hartford Cas. Ins. Co.,* 332 F.3d 215, 223 (4th Cir. 2003) ("We cannot . . . read Ford's complaint to allege disparagement of Ford's products, except as the result of the alleged dilution of its trademarks.").  Plaintiffs fail to address the holding of *Superformance*, which is controlling precedent and involved the same type of claim at issue here:  counts of trademark infringement and unfair competition based on the sale of infringing goods under a trademarked product or brand name.  *See* 332 F.3d at 222 ("None of the allegations go any further than the scope of the Lanham Act's purpose . . . . And complaints falling within the scope of the Lanham Act are precisely the type excluded from coverage by the terms of the Hartford policy.").  Here, as in *Superformance*, the underlying action alleges no disparaging statements, nor any other covered injury.

Plaintiffs incorrectly assert that Envirocare's general allegations of harm resulting from "advertising," "marketing," "solicitation," and "promotion" of infringing products is equivalent to an allegation  of publication of material that disparages an organization's goods, products, or services.  Dkt. No. 9 at 8 ("It is reasonable to deduce that Envirocare has alleged that S.A. and Anand published statements to the public-at-large, because the allegations of 'advertising,' . . . require dissemination of statements[.]").  Plaintiffs' argument would turn every trademark infringement suit into a product disparagement claim, and has been repeatedly rejected by courts.

Allegations that Plaintiffs advertised the infringing products are not the same as allegations that Plaintiffs made statements disparaging Envirocare. *See, e.g., Purplus Inc. v. Hartford Cas. Ins.*, No. C 12-03689 JSW, 2013 WL 1149768, at *5 (N.D. Cal. Mar. 19, 2013) ("[R]eferences to the term 'advertisement' do not transform trademark infringement allegations into advertising injuries.").

Plaintiffs attempt to buttress their argument by pointing to Envirocare's allegations that the infringing goods were "inferior"[1] and that the sale of infringing goods harmed Envirocare's reputation.[2] Dkt. No. 9 at 9. This argument fails because the conduct at issue in the Envirocare Action is the sale of infringing goods, the publication of any material disparaging Envirocare's products. Numerous courts have held that the sale of infringing products does not constitute disparagement. *See, e.g., Hartford Cas. Ins. Co. v. Swift Distribution, Inc.,* 326 P.3d 253, 265 (Cal. 2014) ("[A] party's attempt to copy or infringe on the intellectual property of another's product does not, without more, constitute disparagement."). If anything, Plaintiffs' use of the name "Envirocare" reflects positive beliefs about Envirocare's reputation. *See Homedics, Inc. v. Valley Forge Ins. Co., a Pennsylvania Corp.,* 315 F.3d 1135, 1142 (9th Cir. 2003) ("It does not follow that because an entity imitated the design of a product, it is, therefore, disparaging it. In point of fact, it's quite the opposite -- as has been oft said: imitation is the highest form of flattery."). Plaintiffs are alleged to have passed off their goods under Envirocare's name to benefit from Envirocare's reputation, not to disparage it. *See* Compl. Ex. 3 ¶ 31 ("By appropriating the trademark of Envirocare the Defendants are able to 'palm off' its Infringing Products as the genuine products of Envirocare.").

---

[1] *See* Compl. Ex. 3 ¶ 18 ("Upon information and belief, the products of Defendant are of inferior quality.").

[2] *See* Compl. Ex. 3 ¶ 27 ("[M]isappropriation of the Envirocare trademark has enabled the Defendants to unlawfully trade upon the established good will and reputation of Envirocare[.]").

A claim for product disparagement requires a statement that would clearly be understood as derogatory. *See Swift Distribution, Inc.,* 326 P.3d at 263 ("What distinguishes a claim of disparagement is that an injurious falsehood has been directed *specifically* at the plaintiff's business or product, derogating that business or product and thereby causing that plaintiff special damages.") (emphasis in original). Plaintiffs characterize the Envirocare Action as alleging product disparagement based solely on Envirocare's allegation that the sale of infringing goods harmed its reputation. Dkt. No. 9 at 11-13. Plaintiffs ignore the weight of authority holding that attempting to "pass off" infringing products as genuine does not constitute disparagement. *See Swift Distribution, Inc.,* 326 P.3d at 264 ("There is no coverage for disparagement simply because one partu tries to sell another's goods or products as its own.").

Plaintiffs do not identify any case where a court has found "product disparagement" based solely on allegations that the insured passed off its goods under a trademarked name. The only case Plaintiffs cite that involved the sale of goods under a competitor's name is *Miranda v. California Capital Insurance Co.,* No. A126778, 2011 WL 1168064 (Cal. Ct. App. Mar. 29, 2011). In *Miranda*, the court based its holding not solely on the sale of inferior goods, but rather on allegations that the insureds specifically intended to erode their competitor's reputation:

> The complaint alleges that the insureds not only presented inferior cows as Christie cows but also did so with the intention of disrupting Christie's business relationships with ranchers. ***This is different from the usual "palming off" case, where one trades upon the good reputation of an established product to substitute another product.*** Here, the allegations of the Christie complaint suggest that the insureds' intention was not simply to palm off their inferior cows for Christie cows (hoping the substitution would go undetected) but also to disrupt Christie's livestock business by creating the false impression that Christie's cows are substandard and thereby impairing future sales.

*Id.* at *4 (citations omitted, emphasis added). Here, no such scheme is alleged. Envirocare merely alleges that Plaintiffs used Envirocare's name to trade off of its reputation and increase their own sales. *See* Compl. Ex. 3 ¶ 27 ("[M]isappropriation of the Envirocare trademark has

enabled the Defendants to unlawfully trade upon the established good will and reputation of Envirocare[.]"); *see also Swift Distribution*, *Inc.,* 326 P.3d at 265 ("A false or misleading statement that causes consumer confusion, but does not expressly assert or clearly imply the inferiority of the underlying plaintiff's product, does not constitute disparagement.").

The other cases Plaintiffs cite involve statements with express or clearly implied messages about the quality or authenticity of competitors' products.[3]  In *JAR Laboratories LLC v. Great American E & S Insurance Co.,* 945 F. Supp. 2d 937 (N.D. Ill. 2013), the insured published a press release stating that its product "contains the same active ingredient as the leading prescription patch" and "[l]ike the prescription brand [. . .] will provide relief for up to 24 hours." *Id.* at 940.  The court found that the claim involved product disparagement based on alleged statements that would clearly be understood to refer to the quality of the plaintiff's product.[4]  *Id.* at 943; *see also E.piphany, Inc. v. St. Paul Fire & Marine Ins. Co.,* 590 F. Supp. 2d 1244, 1249 (N.D. Cal. 2008) (insured claimed to be the "first" and "only" company to provide a certain type of software), *reconsideration denied sub nom. Infor Global Solutions (Michigan), Inc. v. St. Paul Fire & Marine Ins. Co.,* 686 F. Supp. 2d 1005, 1007 (N.D. Cal. 2010) ("Specifically, the Court found significant the allegations that Plaintiff falsely stated that it was the 'only' producer of 'all Java' and 'fully J2EE' software solutions, which was an 'important differentiator' between competing products, even though some competitors offered products with these exact features."); *Natural Organics, Inc. v. OneBeacon Am. Ins. Co.,* 102 A.D.3d 756, 758 (N.Y. App. Div. 2013) ("The statement that HON had been appointed the exclusive distributor of

---

[3] In *State Farm Fire & Casualty Co. v. Franklin Center for Government & Public Integrity,* No. 1:13-cv-957 AJT/TRJ, 2014 WL 1365758 (E.D. Va. Apr. 4, 2014), the underlying action did not involve trademark infringement or the sale of any goods whatsoever.  *See id.* at *1 ("All of GreenTech's claims are based on two articles, authored by Ward, and posted by FCGPI on its website, *Watchdog.org.*").

[4] The underlying action in *JAR Laboratories* involved no assertion of intellectual property rights.  *See id.* at 945 ("Defendant does not dispute that the underlying complaints make no allegations of intellectual property infringement or contest that TPU has no trademark rights with respect to Lidoderm.").

Nature's Plus products in the Nordic region could imply that NPN's inventory of Nature's Plus products was unauthorized."); *PCB Piezotronics, Inc. v. Kistler Instrument Corp.,* No. 96-CV-0512E(F), 1997 WL 800874, at *2 (W.D.N.Y. Dec. 31, 1997) (duty to defend arose from allegations that the insured placed an advertisement that misrepresented "the nature, characteristics and qualities" of a competitor's goods"); *Atl. Mut. Ins. Co. v. J. Lamb, Inc.,* 100 Cal. App. 4th 1017, 1024 (2002) (insured induced customers not to sell plaintiff's products by making statements about alleged patent infringement and threatening legal action). Envirocare alleges no statement disparaging the quality of its product, nor any conduct from which such a statement could be inferred. Here, as in *Superformance*, Envirocare's complaint cannot be read to allege product disparagement, "except as the result of the alleged [infringement] of its trademarks." *See* 332 F.3d at 223.

## B. ENVIROCARE DOES NOT ALLEGE SLOGAN INFRINGEMENT

Plaintiffs' characterization of "Envirocare" as a slogan conflicts with the overwhelming consensus among courts that a product or brand name alone is not a "slogan." *See Hugo Boss Fashions, Inc. v. Fed. Ins. Co.,* 252 F.3d 608, 619 (2d Cir. 2001) (coverage grant for infringement of "trademarked slogan" did not apply to use of the name "BOSS" because a slogan "must be something, ***other than the house mark or product mark itself,*** that provides . . . a reminder [of the brand]") (emphasis in original); *Citizens Ins. Co. of Am. v. Uncommon, LLC,* 812 F. Supp. 2d 905, 913 (N.D. Ill. 2011) ("As the Second Circuit exhaustively demonstrated in *Hugo Boss,* the term 'slogan' has acquired a settled legal meaning that excludes the trademarked name of a company, brand, or product."). Plaintiffs do not acknowledge this body of case law. Instead, they contend that Envirocare is "as much of a slogan as 3M's 'Innovation' or Macbook Air's 'Thinnovate' or Nike's 'Just Do It.'" Dkt. No. 9 at 15. A better analogy would compare

"Envirocare" to "3M," "Apple," or "Nike" -- all house marks, not slogans.[5]  Envirocare never

alleges the use of a word or phrase that could be characterized as a "slogan," and Plaintiffs'

argument for finding "slogan infringement" therefore fails.

A "slogan" is a word or phrase used to promote a product.  *Interstate Bakeries Corp. v.*

*OneBeacon Ins. Co.,* 686 F.3d 539, 546 (8th Cir. 2012) ("Two applicable dictionary definitions

of 'slogan' are: (1) 'a word or phrase used to express a characteristic position or stand or a goal

to be achieved' and (2) 'a brief attention-getting phrase used in advertising or promotion.'")

(quoting Merriam-Webster's Collegiate Dictionary 1174 (11th ed. 2005)).  And a slogan must be

something other than the product or brand name itself.  *Hugo Boss Fashions, Inc.,* 252 F.3d at

619.  Otherwise, as the Second Circuit explained, every trademark suit would be construed to

allege slogan infringement:  "It would be odd indeed to say that the trademarked *name* of a

brand, product, or company constitutes a 'trademarked slogan' merely because it 'remind[s] the

consumer of the brand.'  For under this definition, all house, product, or brand names would

qualify as slogans."  *Id.* (emphasis in original).

Plaintiffs attempt to characterize "Envirocare" as expressing "a sense that by using the

vacuum products [customers] will be specially caring for their own home environment," and

argue on that basis that the name should be construed as a slogan.  Dkt. No. 9 at 15.  The Eighth

Circuit rejected a similar argument in *Interstate Bakeries* because it lacked any support in the

underlying complaint, and the Court should reject it here for the same reason:

> Although IBC surmises that the word "nature" in "Nature's Own" shows that
> Flowers intends to tout that its breads "contain[ ] 'natural' rather than artificial

---

[5] Sony's "Playstation" is the only other product name that Plaintiffs contend is a slogan. Dkt. No. 9 at 14.  In fact, however, Sony uses a different catchphrase to promote the Playstation:  "It Only Does Everything."  Jim Reilly, *Sony's "It Only Does Everything" Campaign Paying Off,* IGN (April 5, 2010), http://www.ign.com/articles/2010/04/05/sonys-it-only-does-everything-campaign-paying-off.  Plaintiffs cite no authority for the assertion that the name "Playstation" itself has ever been used as a slogan, much less that any court would characterize it as one.

ingredients," there are no allegations in the Flowers Complaint that Flowers actually has "a characteristic position or stand or a goal to be achieved" that is expressed by the term "Nature's Own." Moreover, there is nothing to indicate the extent to which Flowers produces or claims to produce "natural" bread products, however that might be defined.  Similarly, IBC fails to identify anything in the record indicating that Flowers claims to use or actually uses "Nature's Own" as "a brief attention-getting phrase used in advertising or promotion," rather than as a *simple product identifier*.  Once again, while it is conceivable that "Nature's Own" could serve as a slogan in Flowers's marketing efforts for a line of natural bread products, the *lack of any specific allegation relating to such a use*, along with IBC's *failure to identify any instance of such a use* that would have been readily ascertainable by OneBeacon at the time the claim was filed, defeats IBC's claim for a defense under the policy.

*Interstate Bakeries,* 686 F.3d at 546 (emphasis added).  This claim might be different if Envirocare alleged that it used its name as part of a slogan and that Plaintiffs had infringed that slogan, but Envirocare's complaint alleges no such use and infringement.  Plaintiffs' argument is based on pure speculation.

Plaintiffs cite *Travelers Indemnity Co. of Connecticut v. Sterling Wholesale, LLC*, No. 2:12-CV-156, 2013 WL 3816736 (E.D. Va. July 19, 2013) as an example of how conduct at issue in a trademark infringement suit can be found to "fall[] within the ambit of" slogan infringement.  *Id.* at *7; Dkt. No. 9 at 15.  No intellectual property exclusion was at issue in *Sterling Wholesale*.[6]  Moreover, the court in *Sterling Wholesale* based its holding on three factors, none of which is present here.  First, the complaint in *Sterling Wholesale* expressly alleged the use of a "slogan."  *Id.* at *6 ("The underlying complaint alleges generally that the *LifeScan* defendants . . . 'used a slogan, trade dress, word, term, name, symbol, or device . . . in commercial advertising or promotion.'").  Envirocare's complaint does not.  Second, the

---

[6] The court in *Sterling Wholesale* cited *Northern Virginia Funeral Choices, Inc. v. Erie Insurance Co.*, 61 Va. Cir. 352 (Fairfax County 2003), for the principle that slogan infringement may encompass a claim for trademark infringement.  *Sterling Wholesale,* 2013 WL 3816736, at *7.  *Northern Virginia* also did not involve an intellectual property exclusion.  *See Interstate Bakeries Corp. v. OneBeacon Ins. Co.,* 773 F. Supp. 2d 799, 818 (W.D. Mo. 2011), *aff'd*, 686 F.3d 539 (8th Cir. 2012) ("Unlike the policies at issue in . . . *Northern Virginia* . . . the policy at issue in this case specifically excluded coverage for 'infringement or dilution of trademark[.]'").

complaint alleged infringement of a number of listed trademarks, and the court found "[i]t is not clear from the allegations of the underlying *LifeScan* complaint that . . . none of the enumerated trademarked terms might also constitute a slogan, for which advertising injury coverage may be available." *Id.* at *7. Envirocare alleges infringement of a single trademarked name and does not allege infringement of any slogan involving that name. Third, the plaintiff in *Sterling Wholesale* had not identified which packaging materials were counterfeited, so the court found it "reasonable to infer that this counterfeit packaging also included any slogans or copyrighted material that may have been displayed on the genuine article." *Id.* Here, no such inference is possible: Envirocare clearly alleges infringement of a single trademarked name, "Envirocare," and does not allege that the name was used in any slogan. *See* Compl. Ex. 3 ¶¶ 9, 13, 15, 19, 27, 31.

The remaining cases that Plaintiffs cite involve the use of promotional phrases, not product or brand names as such.[7] *See Cincinnati Ins. Co. v. Zen Design Grp., Ltd.,* 329 F.3d 546, 556 (6th Cir. 2003) (distinguishing trademarked product name "SAPPHIRE" from catch phrase, "The Wearable Light," which was used as a tag line to promote it); *Ultra Coachbuilders, Inc. v. Gen. Sec. Ins. Co.,* No. 02-cv-675(LLS), 2002 WL 31528474, at *3 (S.D.N.Y. July 15, 2002) ("While the phrase 'Quality Vehicle Modifier' is the descriptive name of a service program, ***Ford also claims it uses the phrase to promote both the program itself and use of its other products***, Ford vehicles, to limousine converters.") (emphasis added). Here, the only name at

---

[7] Both cases also followed the Second Circuit's holding in *Hugo Boss*, which applies here. *Zen Design Grp., Ltd.,* 329 F.3d at 556 n.10 ("The district court used the legal definition of trademarked slogans found in *Hugo Boss:* 'phrases used to promote or advertise a house mark or product mark, in contradistinction to the house or product mark itself.'"); *Ultra Coachbuilders, Inc.,* 2002 WL 31528474, at *3 ("The Second Circuit, construing a policy governed by New York law, defined 'trademarked slogans' as 'phrases used to *promote or advertise* a house mark or product mark, in contradistinction to the house or product mark itself.'") (quoting *Hugo Boss,* 252 F.3d at 618 (emphasis in original)).

issue is the trademarked identifier "Envirocare," not any promotional catchphrase or tag line.

*See Interstate Bakeries Corp.,* 773 F. Supp. 2d at 812 (W.D. Mo. 2011), *aff'd,* 686 F.3d 539 (8th

Cir. 2012) ("'Nature's Own' is the trademark that is equivalent to the trademark 'SAPPHIRE' in

the *Cincinnati Insurance Co.* case; it is the name of the mark or the product.  However, in this

case, unlike in *Cincinnati Insurance Co.,* there is ***no allegation that there is an accompanying***

***slogan*** such as 'The Wearable Light' which was infringed.") (emphasis added); *see also N.*

*Coast Med., Inc. v. Hartford Fire Ins. Co.,* No. 13-CV-03406-LHK, 2014 WL 605672, at *6

(N.D. Cal. Feb. 17, 2014) ("Courts that have found phrases to be slogans have had much clearer

evidence that the phrase in question was used as an advertising tagline."). Envirocare is a

trademarked product or brand name; it is not a slogan and is not alleged to have been used as

one.

### C.    THE INTELLECTUAL PROPERTY EXCLUSION BARS COVERAGE

Even if it had alleged "personal and advertising injury" as defined by the Policies, the

Envirocare Action would still be barred from coverage by the Intellectual Property Exclusion.

Every version of the Intellectual Property Exclusion contained in the Policies from Years 1

through 4 applies at a minimum to injury arising out of  "any violation of any intellectual

property rights," including trademark.  *See* Compl. ¶ 13.  That language plainly bars coverage for

straightforward trademark infringement claims such as the ones at issue here.[8]  *See*

*Superformance*, 332 F.3d at 223-24 ("Even if these claims could arguably be characterized as

---

[8] Plaintiffs focus their argument primarily on the part of the Intellectual Property Exclusion concerning "injury or damage alleged in any claim or 'suit' that also alleges an infringement or violation of any intellectual property right," which was part of the Policies for Years 2-4. Dkt. No. 9 at 18-27; Compl. ¶ 13.  That part of the exclusion would also bar coverage for the Envirocare Action, but there is no need to reach it here.

claims for 'disparagement' and 'false advertising' that further satisfy the definition of 'personal and advertising injury,' they would still be properly excluded by the trademark exclusion.").[9]

The Fourth Circuit has repeatedly found coverage for trademark infringement claims to be barred by Hartford's Intellectual Property Exclusion.  In *Superformance*, the Fourth Circuit held that Hartford's intellectual property exclusion barred coverage for an action alleging trademark infringement, trademark dilution, and "straightforward claims of unfair competition through Superformance's use of the Ford name on products it enters into commerce."  332 F.3d at 222.  The court found that "[n]one of the allegations go any further than the scope of the Lanham Act's purpose," and that "complaints falling within the scope of the Lanham Act are precisely the type excluded from coverage by the terms of the Hartford policy."  *Id.*

More recently, the Fourth Circuit found trademark allegations barred by the same policy language at issue here:  that the "insurance does not apply to . . . 'personal and advertising injury' . . . [a]rising out of any violation of any intellectual property rights, such as . . . trademark, trade name, trade secret, service mark or other designation of origin or authenticity."  *Marvin J. Perry, Inc. v. Hartford Cas. Ins. Co.,* 412 Fed. Appx. 607, 610 (4th Cir. 2011); *see also* Compl. ¶ 13; Compl. Ex. 1 at "Cyberflex Coverage" Form.  In *Perry*, the insured transferred its furniture dealing business, including the rights to the trade name "Marvin J. Perry & Associates," to Perry & Wilson, Inc. ("P & W").  *Id.* at 612.  P & W alleged that the insured operated a website to make it appear that the insured was the only entity trading under the name "Marvin J. Perry & Associates."  *Id.*  Based on these allegations, P & W sued for trademark dilution pursuant to the Lanham Act and common law unfair competition.  *Id.* at 610.

---

[9] Plaintiffs cite *Superformance* once, in their discussion of the First Publication Exclusion, stating only that the Fourth Circuit "ultimately found an applicable exclusion."  Dkt. No. 9 at 28.  They fail to mention that it was an intellectual property exclusion, which applied to injury "[a]rising out of the infringement of trademark, trade name, service mark or other designation of origin or authenticity."  *Superformance,* 332 F.3d at 218.

The "dispositive question" in *Perry* was "whether P & W asserted an unfair competition claim that did not arise out of a violation of P & W's trademark or trade name." *Id.* at 613. The court held that coverage was barred because the plaintiff asserted no such claim:

> Ultimately, as the district court stated, "the independent unlawful conduct that caused P & W's business injury, which is the gravamen of P & W's underlying complaint and an element of the tort [of unfair competition] is based upon MJP's use of its trade name, trademark, logo, and website . . . in violation of P & W's registration and ownership of that name and mark[.]" As such, any allegation of unfair competition would necessarily be excluded from coverage as a claim "arising out of any violation of any intellectual property rights, such as ... trademark, trade name ... or other designation of origin or authenticity." In sum, . . . . (1) Under the terms of the insurance policy, although coverage is provided for some advertising injury, the Intellectual Property Rights Exclusion relieves Hartford Insurance of its duty to defend when a suit brought against MJP contains only allegations arising out of trademark or trade name violations; and (2) The allegations in the underlying action by P & W, which focused exclusively on improper use of P & W's trademark and trade name, did not potentially fall within the scope of the coverage provided.

*Id.* at 614. The same analysis applies here because Envirocare's causes of action are based solely on the use of the trademarked name "Envirocare." *See* Compl. Ex. 3 ¶ 19 (Count I based on "infringing the rights of Envirocare in its Trademark by offering for sale . . . products using the Envirocare trademark"), ¶ 27 (Count II based on "unauthorized and unlawful misappropriation of the Envirocare trademark"), ¶ 31 (Count III based on "appropriating the trademark of Envirocare"), ¶ 35 (Count IV based on the same "aforementioned activities"); *see also Parameter Driven Software, Inc. v. Mass. Bay Ins. Co.,* 25 F.3d 332, 337 (6th Cir. 1994) (unfair competition counts based on infringement of trademarked name were barred by exclusion for offenses "arising out of . . . infringement of trademark").

Plaintiffs argue that the Intellectual Property Exclusion does not apply because "Envirocare did not allege that S.A. and Anand sold counterfeit products." Dkt. No. 9 at 18. This contradicts Envirocare's complaint, which is based entirely on the alleged sale of goods that infringed the Envirocare trademark. *See* Compl. Ex. 3 ¶ 31 ("By appropriating the trademark of

Envirocare the Defendants are able to 'palm off' its Infringing Products as the genuine products of Envirocare."). It is immaterial whether Envirocare calls the infringing goods "counterfeit;" the dispositive fact is that all of Envirocare's causes of action are based on Plaintiffs' alleged use of the Envirocare name. *See* Compl. Ex. 3 ¶¶ 19, 27, 31, 35.

Plaintiffs also state, without explanation, that "Envirocare's claims do not 'arise out of . . . infringement or violation of . . . patent [rights or laws]' as required for the exclusion to apply." Dkt. No. 9 at 20. Yet the Intellectual Property Exclusion clearly is not limited to patent infringement: it specifically extends to "***any*** violation of ***any*** intellectual property rights, ***such as*** . . . trademark . . . or other designation of origin or authenticity." Compl. ¶ 13 (emphasis added); Compl. Ex. 1 at "Cyberflex Coverage" Form; *see also Marvin J. Perry, Inc. v. Hartford Cas. Ins. Co.,* 615 F. Supp. 2d 432, 436 (D. Md. 2009), *aff'd* 412 Fed. Appx. 607 (4th Cir. 2011) ("Although the exclusion does not explicitly list other forms of intellectual property rights, the exclusion's use of the expansive category '***any*** intellectual property rights' and the phrase 'such as' indicates that its list of intellectual property rights is neither exhaustive or exclusive.") (emphasis in original). Hartford's Intellectual Property Exclusion plainly applies to trademark infringement allegations and other similar causes of action based on false designation of origin. *See Native Am. Arts, Inc. v. Hartford Cas. Ins. Co.,* 435 F.3d 729, 734 (7th Cir. 2006) ("[E]ven if the policies' exclusions applied only to trademark-like violations, they would apply here, because a violation of the Indian Arts and Crafts Act is just such a violation."); *Tucci v. Hartford Fin. Servs. Grp., Inc.,* No. CIV. 08-4925(JBS/JS), 2011 WL 2555379, at *17 (D.N.J. June 27, 2011), *aff'd* 507 Fed. Appx. 211 (3d Cir. 2012) ("[T]he clear purpose of the intellectual property exclusion . . . is to offer no defense or indemnification in a suit for violations of trademark rights."); *see also Feldman Law Grp., P.C. v. Liberty Mut. Ins. Co.,* 476 Fed. Appx. 913, 915 (2d

Cir. 2012) (district court properly granted insurer's motion to dismiss because intellectual

property exclusion barred coverage for action alleging trade dress infringement).

Plaintiffs' argument that the Envirocare Action includes "express allegations of

defamation/disparagement" that "do not involve any intellectual property right" also does not

withstand scrutiny.  *See* Dkt. No. 9 at 21.  Any reputational harm alleged in the Envirocare

Action is a consequence of the alleged trademark infringement, not a separate basis for

Envirocare's claims.  *See* Compl. Ex. 3 ¶ 27 ("[M]isappropriation of the Envirocare trademark

has enabled the Defendants to unlawfully trade upon the established good will and reputation of

Envirocare[.]"); *see also Superformance,* 332 F.3d at 223 ("We cannot . . .  read Ford's complaint

to allege disparagement of Ford's products, except as the result of the alleged dilution of its

trademarks.").  One of the cases cited by Plaintiffs makes this same point:

> There are no allegations in the New Jersey complaint that Dollar Phone's
> advertisements either specifically referenced its competitor's products or
> compared Dollar Phone's cards to other phone cards.  The New Jersey plaintiff's
> unfair competition complaint certainly included repeated allegations that the
> misleading advertising "has damaged and is continuing to damage Plaintiff's
> reputation of being the best value provider of quality calling cards," "damaged the
> reputation of the prepaid calling card industry," and "[a]s a result of Defendants'
> acts as alleged above, Plaintiffs have suffered and will continue to suffer
> irreparable harm in the form of damage and injury to their business, reputation
> and goodwill." [. . .] Reading these allegations plainly, however, they do not
> allege that the advertisements disparaged the plaintiff's goods, but rather that they
> hurt the plaintiff's business by unfairly shoring up Dollar Phone's reputation.

*Dollar Phone Corp. v. St. Paul Fire & Marine Ins. Co.,* No. CV-09-1640 DLI/VVP, 2012 WL

1077448, at *9 (E.D.N.Y. Mar. 9, 2012), *report and recommendation adopted* 2012 WL

1078994 (E.D.N.Y. Mar. 30, 2012), *aff'd* 514 Fed. Appx. 21 (2d Cir. 2013).

None of the cases Plaintiffs cite supports their argument that Envirocare has alleged any

offense that does not arise out of the excluded trademark infringement.  In *Align Technology,*

*Inc. v. Federal Insurance Co.,* 673 F. Supp. 2d 957 (N.D. Cal. 2009), the underlying complaint

included explicit claims for defamation based on the insured's statement that the claimant was engaged in a variety of improper business practices. *Id.* at 972. The court noted that "such alleged statements bear no relation to the assertion of intellectual property rights," and held that coverage for that alleged defamation was not excluded by the policy's intellectual property exclusion. *Id.* That decision has no bearing on the current case where the sole conduct at issue is the alleged "passing off" of non-Envirocare products under the trademarked Envirocare name. *See* Compl. Ex. 3 ¶ 31 ("By appropriating the trademark of Envirocare the Defendants are able to 'palm off' its Infringing Products as the genuine products of Envirocare."). This case presents exactly the type of situation that the parties in *Align Technology* agreed would be subject to the Intellectual Property Exclusion. *See* 673 F. Supp. 2d at 969-70 (insured argued that "unfair competition" as used in the policy's intellectual property exclusion "refers to the intellectual property tort of passing off, which was not alleged by either party").

Plaintiffs also cite *KLA-Tencor Corp. v. Travelers Indemnity Co. of Illinois,* No. C-02-05641(RMW), 2003 WL 21655097 (N.D. Cal. Apr. 11, 2003). The insurer in that case was Travelers[10], and the language of the exclusion at issue was not the same as Hartford's. *Id.* at *2 (Travelers policy excluded "'personal injury' or 'advertising injury' arising out of or directly or indirectly related to the actual or alleged publication or utterances of oral or written statements, whether made in advertising or otherwise, which is claimed as an infringement, violation or defense of any of the following rights or laws . . . .").

Moreover, the underlying suit in *KLA-Tencor* expressly alleged not only patent infringement, but also "disparaging and untrue statements to actual and prospective customers" concerning the plaintiffs' financial condition and business practices. The court concluded that

---

[10] Plaintiffs incorrectly state that the court in *KLA-Tencor* "concluded that Hartford had failed to prove" that its intellectual property exclusion applied. Dkt. No. 9 at 22. Hartford was not a party to *KLA-Tencor.* 2003 WL 21655097, at *1.

those allegations of disparagement were sufficiently distinct from the infringement claims that they were not subject to the intellectual property exclusion. *Id*. at \*6. The Envirocare Action does not involve any allegations of disparaging statements not tied to the alleged infringement.

The other cases Plaintiffs cite are similarly inapposite. *See Hartford Fire Ins. Co. v. Vita Craft Corp.,* 911 F. Supp. 2d 1164, 1180 (D. Kan. 2012) ("[T]he underlying complaint alleged that Vita Craft spread false rumors about a TSI licensee, and . . . these allegations are not tied to intellectual property rights."); *see also Electronics for Imaging, Inc. v. Atl. Mut. Ins. Co.,* No. C-06-03947(CRB), 2006 WL 3716481, at \*5 (N.D. Cal. Dec. 15, 2006) (court found potential coverage for malicious prosecution, but "[i]f the underlying actions had been suits solely for patent infringement, and did not allege facts giving rise to a potential malicious prosecution claim, [the insurer] would be correct" that no coverage was available). The injury at issue in the Envirocare Action resulted entirely from Plaintiffs' alleged trademark infringement and, as such, is barred by the Intellectual Property Exclusion. *See* Compl. Ex. 3 ¶ 9 ("This action arises from the Defendants intentional scheme to compete unfairly by selling accessories for vacuum cleaners that compete with Plaintiff, EnviroCare ***by advertising and selling non-Envirocare-branded products under the Envirocare name***.") (emphasis added); *Admiral Ins. Co. v. G4S Youth Servs.,* 634 F. Supp. 2d 605, 614 (E.D. Va. 2009) ("[T]he phrase '[. . .] arising out of and in the course of [. . .]' means the injury claimed originated from, or came into being as a result of [the excluded conduct].").

## III.   CONCLUSION

Based on the foregoing, Hartford respectfully requests that the Court deny Plaintiffs' Motion and grant Hartford's motion to dismiss with prejudice or, in the alternative, grant summary judgment in favor of Hartford.

Date: March 5, 2015                          Respectfully submitted,

                                             */s/R. Scott Caulkins*
                                             R. Scott Caulkins, Esq., VSB No. 23584
                                             CAULKINS & BRUCE, PC
                                             2300 Wilson Blvd., Suite 240
                                             Arlington, VA 22201
                                             Telephone: (703) 558-3664
                                             Facsimile: (703) 525-1331
                                             scaulkins@caulkinsbruce.com

                                             *Pro Hac Vice:*

                                             James P. Ruggeri, DC Bar No. 431034
                                             SHIPMAN & GOODWIN LLP
                                             1875 K Street NW, Suite 600
                                             Washington, DC  20006
                                             Tel:  202-469-7750
                                             Fax:  202-469-7751
                                             jruggeri@goodwin.com

                                             *Counsel for Defendant Hartford*
                                             *Casualty Insurance Company*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 5th day of March 2015, I electronically filed the foregoing

with the Clerk of Court using the CM/ECF system, which will send a notification of such filing

(NEF) to the following:

John Janney Rasmussen
Insurance Recovery Law Group PLC
3015 E Broad St
PO Box 8049
Richmond, VA 23223
804−308−1359
Fax: 804−308−1349
jjr@insurance−recovery.com

David Allan Gauntlett
Gauntlett & Associates
18400 Von Karman Avenue
Suite 300
Irvine, CA92612

*Counsel for Plaintiffs*

*/s/R. Scott Caulkins*
R. Scott Caulkins