IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

S.A. CORP. d/b/a/ VACUUMS          )
UNLIMITED, d/b/a/ GO VACUUM and    )
CHANDER ANAND,                     )
                                   )
        Plaintiffs,                )
                                   )        Case No. 1:15-cv-00071-GBL-MSN
        v.                         )
                                   )
HARTFORD CASUALTY                  )
INSURANCE CO.,                     )
                                   )
        Defendant.                 )

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Plaintiffs S.A. Corp. and Chander Anand's ("Plaintiffs") Motion for Partial Summary Judgment against Hartford (Doc. 5) and Defendant Hartford Casualty Insurance Co.'s ("Hartford") Motion to Dismiss under Rule 12(b)(6) or, in the alternative, for Summary Judgment (Doc. 11). The parties dispute whether Hartford has a duty to defend Plaintiffs against allegations that Plaintiffs used the trademarked term "EnviroCare" to sell non-EnviroCare products.

The issue before the Court is whether Plaintiffs' insurance policies with Hartford encompass the conduct alleged in the underlying action. The Court holds that the insurance policies do not cover the alleged conduct because (1) the underlying action consists of trademark infringement and unfair competition claims which do not allege product disparagement, and therefore do not constitute a "personal and advertising injury" under the insurance policies, and (2) the trademarked term "EnviroCare" is not a slogan, and the underlying action contains no allegations of slogan infringement. Therefore, the conduct alleged does not constitute a

"personal and advertising injury," and Hartford has no duty to defend Plaintiffs against the underlying action.

Accordingly, the Court **GRANTS** Hartford's Motion to Dismiss under Rule 12(b)(6) or, in the alternative, for Summary Judgment (Doc. 11) and **DENIES** Plaintiffs' Motion for Partial Summary Judgment against Hartford (Doc. 5).

## I. BACKGROUND

In this insurance coverage case, Plaintiffs seek a declaratory judgment that their general liability insurer, Hartford, has a duty to defend them in an action entitled *EnviroCare Technologies, LLC v. Vacuums Unlimited, Inc., et al.*, Case No. 2:14-cv-06501 (E.D.N.Y) (the "EnviroCare Action"). S.A. Corp. sells vacuums and vacuum accessories (Doc. 7). Chander Anand is S.A. Corp.'s president. *Id.* S.A. Corp. has a brick and mortar store, but the majority of its sales are online. *Id.* On November 14, 2014, EnviroCare, a vacuum accessories manufacturer, sued Plaintiffs S.A. Corp. and Anand, alleging that Plaintiffs used the trademarked name "EnviroCare" to sell non-EnviroCare products.

Attached to EnviroCare's Amended Complaint filed on January 26, 2015 is a certificate for the trademark of "EnviroCare" (Doc. 4-2, Ex. A). EnviroCare seeks damages and injunctive relief under four legal theories:

Count I:  Federal Trademark Infringement under 15 U.S.C. § 1114

"Subsequent to the adoption and use of the EnviroCare trademark, for vacuum accessories by EnviroCare, the Defendants have been advertising and offering for sale on the internet, in at least one internet marketplace, Amazon.com, The Infringing Products listed and advertised under the name EnviroCare" (Doc. 4-3, ¶ 15).

"EnviroCare has given notice to the Defendants herein that the use of the name EnviroCare by Defendants violates the rights of the plaintiff in its trademark; and despite such

notification, the Defendants have continued to list The Infringing Products using the name EnviroCare." *Id.* ¶ 16.

> **Count II:** Federal Common Law Unfair Competition under 15 U.S.C.
> § 1125

"The Defendants' unauthorized and unlawful misappropriation of the EnviroCare trademark has enabled the Defendants to unlawfully trade upon the established good will and reputation of EnviroCare as a provider of high-quality replacement vacuum accessories." *Id.* ¶ 27.

> **Count III:** Common Law Unfair Competition under the Laws of the
> State of New York

"By appropriating the trademark of EnviroCare the Defendants are able to 'palm off' its Infringing Products as the genuine products of EnviroCare. The Defendants are thus deliberately and knowingly misrepresenting and diverting Plaintiff's goodwill, and the reputation symbolized thereby, and therefore unfairly competing with EnviroCare." *Id.* at ¶ 31

> **Count IV:** Unfair Competition under the Laws of the State of New
> York

"The aforementioned activities of Defendants violates §§ 349 and 350 of the New York General Business Law. *Id.* at ¶ 35.

Following service of EnviroCare's complaint, Plaintiffs gave notice of this action to Hartford. Hartford acknowledged the notice on December 22, 2014 (Doc. 4).

Plaintiffs seek a declaratory judgment as to their rights under Policy No. 35 SBA PE4835, which Hartford issued to S.A. Corp. for four consecutive annual policy periods from May 10, 2011 to May 10, 2015 ("Policies"). Subject to their terms, conditions, and exclusions, the Policies provide business liability coverage for "personal and advertising injury" caused by an enumerated offense during the policy period. The policies contain an Intellectual Property

Exclusion which, for all applicable policy periods, bars coverage for injuries arising out of any violation of any intellectual property rights, including trademark.

Plaintiffs allege that the factual allegations in Counts II, III and IV[1] of the EnviroCare Action potentially fall within Hartford's "personal and advertising injury" policy under two different provisions in the Policies:

(1) Offense (d): "oral or written publication, in any manner, of material that . . . disparages a person's or organization's goods, products or services"

(2) Offense (g): "infringement of . . . slogan in your 'advertisement'"

On February 11, 2015, Hartford denied coverage to Plaintiffs. This matter is now before the Court on Plaintiffs' Motion for Partial Summary Judgment (Doc. 4) and Hartford's Motion to Dismiss under 12(b)(6), or in the alternative, for Summary Judgment[2] (Doc. 11).

## II. STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56, the Court must grant summary judgment if the moving party demonstrates that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).

In reviewing a motion for summary judgment, the Court views the facts in the light most favorable to the nonmoving party. *Boitnott v. Corning, Inc.*, 669 F.3d 172, 175 (4th Cir. 2012) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). Once a motion for summary judgment is properly made and supported, the opposing party has the burden of showing that a

---

[1] Plaintiffs do not allege that Count I (Federal Trademark Infringement under 15 U.S.C. § 1114) of the EnviroCare Action is subject to coverage under the Policies. *See* Doc. 4, ¶ 16.

[2] The Court will treat Harford's motion as a motion for summary judgment, as Hartford submitted declarations and other materials with its motion. "When matters outside the pleading are presented to and not excluded by the court, the [12(b)(6)] motion shall be treated as one for summary judgment and disposed of as provided in Rule 56." *Laughlin v. Metropolitan Washington Airports Authority*, 149 F.3d 253, 261 (4th Cir. 1998) (internal citations omitted).

genuine dispute exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986); *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (citations omitted). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Emmett v. Johnson*, 532 F.3d 291, 297 (4th Cir. 2008) (quoting *Anderson*, 477 U.S. at 247–48).

A "material fact" is a fact that might affect the outcome of a party's case. *Anderson*, 477 U.S. at 248; *JKC Holding Co. v. Wash. Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir. 2001). The materiality of a fact is determined by the substantive law, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248; *Hooven-Lewis v. Caldera*, 249 F.3d 259, 265 (4th Cir. 2001).

A "genuine" issue concerning a "material" fact arises when the evidence is sufficient to allow a reasonable jury to return a verdict in the nonmoving party's favor. *Resource Bankshares Corp. v. St. Paul Mercury Ins. Co.*, 407 F.3d 631, 635 (4th Cir. 2005) (quoting *Anderson*, 477 U.S. at 248). Rule 56(e) requires the nonmoving party to go beyond the pleadings and by its own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

### III. ANALYSIS

The Court GRANTS Hartford's Motion for Summary Judgment and DENIES Plaintiffs' Motion for Partial Summary Judgment for two reasons. First, the Court finds that Plaintiffs' conduct, as alleged in the EnviroCare Action, does not constitute "publication of material that

disparages EnviroCare's products." Therefore, Hartford does not owe a duty to defend under offense (d) of the Policies. Second, the Court finds that the trademarked term "EnviroCare" is not a slogan. Rather, it is a brand name or product name. Furthermore, EnviroCare Action contains no allegations of slogan infringement. Accordingly, Hartford does not owe a duty to defend under offense (g) of the Policies.

In determining whether there is a duty to defend, the Court must follow the "Eight Corners" Rule and look at the four corners of the underlying complaint and the four corners of the underlying insurance policies. *See Travelers Indem. Co. of Am. v. Portal Healthcare Solutions, LLC*, 35 F. Supp. 3d 765, 769 (E.D. Va. 2014); *Superformance Int'l Inc. v. Hartford Cas. Ins. Co.*, 332 F.3d 215, 220 (4th Cir. 2003) ("Under Virginia law, the determination of whether an insurer must defend an underlying action depends on comparison of the policy language with the underlying complaint to determine whether any claims alleged [in the complaint] are covered by the policy.").

Under Virginia law, an insurer's duty to defend an insured "is broader than its obligation to pay" or indemnify an insured. *Portal Healthcare Solutions*, 35 F. Supp. 3d at 769 (citing *Brenner v. Lawyers Title Ins. Corp.*, 397 S.E.2d 100, 102 (1990)). As such, an insurer has a duty to defend the insured so long as the complaint alleges grounds for liability "potentially or arguably covered by the policy." *Id.* (citing *Donnelly v. Transp. Ins. Co.*, 589 F.2d 761, 767 (4th Cir. 1978)). Phrased in the negative, the duty to defend does not exist only where the complaint clearly demonstrates no basis upon which the insurer could be required to indemnify the insured. *Id.* (citing *Reisen v. Aetna Life & Cas. Co.*, 302 S.E.2d 529, 531 (1983)).

Nevertheless, any uncertainties regarding policy language must be construed in favor of the insured. *Id.* (citing *Fuisz v. Selective Ins. Co.*, 61 F.3d 238, 242 (4th Cir. 1995)). It is the

insurer's responsibility to use "language clear enough to avoid any such ambiguity" if there are particular types of coverage that it does not want to provide. *Id.* (citing *St. Paul Fire & Marine Ins. Co. v. S.L. Nusbaum & Co., Inc.,* 316 S.E.2d 734, 736 (1984)). Virginia law requires that "[w]hen an initial pleading 'alleges facts and circumstances, some of which would, if proved, fall within the risk covered by the policy,' the insurance company is obliged to defend its insured." *Id.* (citing *Nationwide Mut. Ins. Co. v. Overlook, LLC,* 785 F. Supp. 2d 502, 531 (E.D. Va. 2011) (quoting *Parker v. Hartford Fire Ins. Co.,* 278 S.E.2d 803, 804 (1981)).

Thus, under Virginia law, the question of whether the insurer has a duty to defend does "not require the district court to resolve factual questions at all. [Rather, it] need only decide such coverage by comparing what [the plaintiff in the underlying suit] has alleged . . . with the language of the . . . insurance policy." *Id.* (citing *Penn–Am. Ins. Co. v. Coffey,* 368 F.3d 409, 413 (4th Cir. 2004)). In which case, the insured bears the initial burden of proving coverage under Virginia law. *See Travelers Indem. Co. of Conn. v. Sterling Wholesale, LLC,* No. 2:12cv156, 2013 WL 3816736, at *5 (E.D. Va. July 19, 2013) (citing *Furrow v. State Farm Mut. Ins. Co.,* 375 S.E.2d 738, 740 (Va. 1989), and *Md. Cas. Co. v. Cole,* 158 S.E. 873, 876 (Va. 1931)). At the same time, the insurer has burden of proving that an exclusion applies. *Id.* (citing *Town Crier Inc. v. Hume,* 721 F. Supp. 99, 101 (E.D. Va. 1989), and *Johnson v. Ins. Co. of N. Am.,* 350 S.E.2d 616, 619 (Va. 1986)).

### 1.   Plaintiffs Have Not Established that Hartford Owes a Duty to Defend against the EnviroCare Action under Offense (d) of the Policies

When determining whether an insurance policy's "advertising injury" clause covers the claims alleged in an underlying action, this Court has consistently applied a three-part test. *See e.g., Sterling Wholesale,* 2013 WL 3816736, at *6; *Premier Pet Prods.,* 678 F. Supp. 2d at 415; *Solers, Inc. v. Hartford Cas. Ins. Co.,* 146 F.Supp.2d 785, 792 (E.D. Va. 2001). Under the three-

part test, the insurer will owe a duty to defend if: "(1) [the insured]'s conduct, as alleged in the [underlying lawsuit], constituted one of the offenses enumerated by the Policy giving rise to advertising injury; (2) [the insured]'s conduct occurred in the course of advertising its goods, products, or services; and, (3) the advertising activities caused [the underlying tort plaintiff]'s alleged harm." *See Sterling Wholesale*, 2013 WL 3816736, at *6. Thus, the Court will review the underlying EnviroCare Action using the three-step analysis to determine whether there is a *potentiality* that EnviroCare stated a claim that, if proved, could be covered by the policy issued by Hartford.

Plaintiffs allege that Hartford has a duty to defend against the EnviroCare Action under offense (d) of the "personal and advertising injury" provision in the insured's policies: (1) "publication of material . . . that . . . disparages a[n] . . . organization's goods, products or services." *See* Doc. 4 ¶¶ 19, 36.

### a. Plaintiffs' Conduct, as Alleged in the EnviroCare Action, Does Not Constitute "Publication of Material" that "Disparages" EnviroCare's Products under the Policies.

Under the first prong of the "advertising injury" three-part test, the Court must consider whether Plaintiffs' conduct, as alleged in the EnviroCare Action, constituted "publication of material . . . that . . . disparages a[n] . . . organization's goods, products or services." The Court will apply a two-part test to determine whether potential coverage exists. Under the Policies, the insured suffers a "personal and advertising injury" if two elements are met: (1) "publication of material" (2) "that disparages a[n] . . . organization's goods, products or services."

### i. The EnviroCare Action alleges publication of material.

The Court finds that "advertising and offering for sale [Plaintiffs' infringing product] on the internet, in at least one internet marketplace, Amazon.com, [where Plaintiffs' infringing

products are] listed and advertised under the name EnviroCare" constitutes "publication of material," and thus satisfies the Policies' first requirement for coverage.

The term "publication" is not defined in the Policies. Because the term is undefined, "general rules of contract interpretation, and specifically insurance contract interpretation, require" that the term "be given its plain and ordinary meaning." *See Solers,* 146 F.Supp.2d at 792. Virginia courts customarily turn to a dictionary for assistance in deciphering a term's plain meaning. *See Portal Healthcare Solutions*, 35 F. Supp. 3d at 770. Here, Plaintiffs have provided the Court with a definition of "publication" from *Random House Unabridged Dictionary* as "the state or fact of being published" (Doc. 9 at 7). To "publish" means "to communicate to some person or persons other than the person defamed." *Id.* In Virginia, "publication" has been held to occur "when information is 'placed before the public,'" regardless of whether anyone has viewed the information. *Id.* at 771.

Plaintiffs assert two arguments in support of their position that its conduct effected a "publication." First, Plaintiffs argue that the "widespread publication of the disparaging materials is expressly alleged in the allegations of the EnviroCare Action" (Doc. 9 at 8). Specifically, EnviroCare has alleged publication by alleging its harm resulted from Plaintiffs' "advertising," "marketing," "solicitation," and "promotion." *Id.* Second, Plaintiffs contend that EnviroCare's prayer for relief seeks to enjoin Plaintiffs' "advertising or promoting" activities by having Plaintiffs "remove all internet listings using the EnviroCare name, or Images of EnviroCare products." *Id.*

Hartford argues that Plaintiffs' conduct, as alleged in the underlying EnviroCare Action, did not effect a "publication" and, instead, constitutes trademark infringement excluded from coverage under the Policies (Doc. 12. at 10). That is, Hartford asserts that the EnviroCare Action

asserts generic allegations that Plaintiffs marketed and sold products under the trademarked EnviroCare name and the action alleges no publications or statements of any kind. *Id.* The Court is not persuaded by Hartford's arguments.

The Court finds that a reasonable inference may be drawn from the facts alleged in the underlying EnviroCare Action that Plaintiffs' information related to EnviroCare was "placed before the public" because EnviroCare has alleged specifically that Plaintiffs "advertis[ed] and offer[ed] for sale on the internet, in at least one internet marketplace, Amazon.com, The Infringing Products listed and advertised under the name EnviroCare." Coupled with the fact that EnviroCare's prayer for relief in the underlying action seeks to enjoin Plaintiffs' "advertising or promoting" activities by having Plaintiffs "remove all internet listings using the EnviroCare name, or Images of EnviroCare products," the Court is persuaded that the alleged conduct in the EnviroCare Action effected a "publication."

### ii. The EnviroCare Action does not allege conduct that disparaged EnviroCare's products.

The Court finds that the underlying EnviroCare Action alleging that Plaintiffs' products were of "inferior quality" to EnviroCare's trademarked products does not constitute conduct by the Plaintiffs that "disparages" EnviroCare's vacuum accessory products.

The term "disparage" is not defined in the Policies. As was the case with the term "publication," the Court turns to a dictionary to assist in deciphering plain meaning of "publication." *See Solers*, 146 F.Supp.2d at 792 (E.D.Va. 2001). Here, Plaintiffs have provided the Court with a definition of "disparagement" and "disparage" from *Black's Law Dictionary* as "[a] false and injurious statement that discredits or detracts from the reputation of another's

character, property, product, or business" and " to speak slightingly of" respectively[3] (Doc. 9 at 8).

When determining whether an insurer has a duty to defend for an "advertising injury," the Fourth Circuit has held that a patent or trademark infringement action which does not allege disparaging statements does not present any potentially covered "advertising injury." *See Superformance Int'l Inc. v. Hartford Cas. Ins. Co.*, 332 F.3d 215, 223–24 (4th Cir. 2003) (trademark infringement and unfair competition claims did not allege product disparagement and, even if they did, "would still be properly excluded by the trademark exclusion").

In *Superformance*, the insured manufactured and sold replica cars modeled and named after the Shelby Cobra. *Id.* at 217. Ford Motor Company and the owners of trademark rights to the Shelby Cobra sued for trademark infringement and trademark dilution under 15 U.S.C. §§ 1114 and 1125 and state common law, as well as unfair competition under state common and statutory law. *Id.* Defendant declined to defend on the basis of the prior-publication and Intellectual Property exclusions, and the insured sued for breach of contract and declaratory judgment. *Id.* at 218. Applying Virginia law, the district court granted summary judgment for Defendant based on the prior-publication exclusion. *Id.* at 219. The Fourth Circuit unanimously affirmed on alternate grounds, finding that although the prior-publication exclusion did not rule out a duty to defend, none of the underlying counts alleged publication of disparaging statements or any other "personal and advertising injury" as defined by Hartford's policy. *See id.* at 223 ("We cannot . . . read Ford's complaint to allege disparagement of Ford's products, except as the result of the alleged dilution of its trademarks."); *see also Ekco Grp., Inc. v. Travelers Indem. Co. of Ill.*, 273 F.3d 409, 414 (1st Cir. 2001) ("[S]urely no one imagines that a policy covering 'advertising injury' was intended to provide coverage for ordinary patent violations . . . .

---

[3] BLACK'S LAW DICTIONARY (10th ed. 2014), *available at* Westlaw.

Coverage on the present facts requires that one stretch the term 'advertising' in a way that has no natural stopping point short of absurd results."); *Elite Brands, Inc. v. Pa. Gen. Ins. Co.,* 164 Fed. Appx. 60, 62 (2d Cir. 2006) ("Under New York law, a claim of disparagement must contain specific assertions of unfavorable facts reflecting upon the rival product.") (citations omitted).

Here, Plaintiffs raise several ambiguous arguments in support of their theory that the underlying EnviroCare Action alleges conduct by the Plaintiff that disparages EnviroCare's vacuum accessory products. First, Plaintiffs argue that EnviroCare has expressly alleged that its reputation was harmed by Plaintiffs' marketing of allegedly "inferior" products in a manner that suggested that the "inferior" products originated from EnviroCare (Doc. 9 at 11). Second, Plaintiffs assert that "a statement equating a competitor's product with an allegedly inferior one is indistinguishable from, and no less disparaging than, a statement describing one's own product as 'superior' to the competitors." *Id.* Third, Plaintiffs argue that a finding of implicit disparagement based on mere inferences can arise so long as it is reasonably derived from the facts pled (Doc. 9 at 12). The Court is not persuaded by any of these arguments.

In opposition, Hartford asserts five arguments to support its proposition that the EnviroCare Action does not contain allegations that Plaintiffs disparaged EnviroCare's products. First, Hartford argues that EnviroCare only alleged that Plaintiffs' infringing goods were "inferior quality"[4] and that the sale of infringing goods harmed EnviroCare's reputation[5] (Doc. 12 at 13). Second, Hartford asserts that Plaintiffs' argument is contrary to established Fourth Circuit precedent in *Superformance* that applied the same policy language at issue here and

---

[4] *See* Doc. 4-3 ¶ 18 ("Upon information and belief, the products of Defendant are of inferior quality.").

[5] *See* Doc. 4-3 ¶ 27 ("[M]isappropriation of the Envirocare trademark has enable the Defendants to unlawfully trade upon the established godo will and reputation of Envirocare[.]").

rejected an attempt to characterize a trademark infringement action as alleging "product disparagement" constituting personal and advertising injury (Doc 12. at 11). Third, Hartford argues that the EnviroCare Action presents the same type of underlying allegations as in *Superformance*: the insured is alleged to have sold its products under a trademarked product or brand name belonging to the plaintiff. *Id.* Fourth, Hartford asserts that courts have consistently held that a patent or trademark infringement action which does not allege disparaging statements does not present any potentially covered "advertising injury."[6]   Fifth, Hartford argues that Plaintiffs' argument – that the alleged inferiority of Plaintiffs' products transforms EnviroCare's trademark allegations into product disparagement claims – would render the Intellectual Property Exclusion meaningless by making every trademark suit into a product disparagement case (Doc 12 at 13).

To be clear, the Court finds that the plain and ordinary meaning of "disparage" is to make a statement or to speak in a manner consistent with the definitions above.  That said, the Court finds that the underlying EnviroCare Action does not allege any *statements* made by Plaintiffs. Instead, Plaintiffs assert a theory of implied disparagement because EnviroCare alleged that Plaintiffs' products are of "inferior quality" and Plaintiffs assert that this means that Plaintiffs' advertising conduct is disparaging.   The Court finds that Plaintiffs' theory of implied disparagement does not fit within the plain and ordinary meaning of "disparage."  Furthermore, consistent with Fourth Circuit precedent in *Superformance*, the Court finds that Plaintiffs' theory of implied disparagement is not supported by case law and is inapposite given the holding in *Superformance*.  The Court will not impute such a reading of the law.  Therefore, the Court finds

---

[6] *See Elite Brands, Inc. v. Pa. Gen. Ins. Co.,* 164 Fed. Appx. 60, 62 (2d Cir. 2006) ("Under New York law, a claim of disparagement must contain specific assertions of unfavorable facts reflecting upon the rival product.") (citations omitted).

that the underlying EnviroCare Action alleging that Plaintiffs' products were of "inferior quality" to EnviroCare's trademarked products does not constitute conduct by the Plaintiffs that "disparages" EnviroCare's vacuum accessory products. As such, Plaintiffs do not meet the requirements of the first prong of the "advertising injury" three-part test. Therefore, Plaintiffs have failed to establish potential coverage under offense (d) of the Policies.

### 2. Plaintiffs Have Not Established that Hartford Owes a Duty to Defend under Offense (g) of the Policies

The Court now considers whether Plaintiffs' alleged conduct falls within the scope of "infringement of . . . slogan in your 'advertisement'" under offense (g) of the Policies.

The term "slogan" is not defined by the Policies. So, the Court again, looks at the ordinary meaning of the term to interpret the policy. Therefore, the Court will turn to a dictionary for assistance in deciphering the term's plain meaning. *See Portal Healthcare Solutions*, 35 F. Supp. 3d at 770. Here, Plaintiffs have provided the Court with a definition of "slogan" from *Random House Unabridged Dictionary* as "a distinctive cry, phrase, motto of any party, group, manufacturer, or person; catchword or catch phrase[7]" (Doc. 9 at 14).

Plaintiffs maintain that the trademarked term "EnviroCare" is a slogan which triggers a duty to defend by Hartford (Doc. 4). Specifically, Plaintiffs contend that the trademarked name "EnviroCare" is a "'portmanteau' of the words 'Environment' and 'Care' or of the phrase 'Environmental Care'" which "gives the public a sense that by using the vacuum products they will be specially caring for their own home environment" (Doc. 9 at 15).

Hartford argues that Plaintiffs' characterization of "EnviroCare" as a slogan conflicts with the overwhelming consensus among courts that a "slogan" is a word or phrase used in advertising and promotion, not a product or brand name (Doc. 12 at 13).

---

[7] Hartford consents to Plaintiffs' definition of "slogan."

The Court finds that Plaintiffs' characterization of "EnviroCare" as a slogan is incorrect as the term is a central component of EnviroCare Technologies, LLC's company name and brand (Doc. 4-3). While no Virginia court has defined the term "slogan" or determined its scope, the Court finds other circuits' usage of the term to be particularly instructive.

The Second Circuit has distinguished between a trademark and a slogan in concluding that a slogan must be different from the company name or a product name. In *Hugo Boss Fashions, Inc. v. Federal Ins. Co.*, 252 F.3d 608 (2d Cir. 2001), the court held that the trademarked name of a brand, product, or company is not itself a "slogan":

> Thus, the Seventh Circuit, in *Blau Plumbing, Inc. v. S.O.S. Fix–It, Inc.*, 781 F.2d 604 (7th Cir.1986), implicitly, though unambiguously, acknowledged the distinction between trademarked house or product names, on the one hand, and slogans or other kinds of trademarks, on the other. That court described a trademarked "slogan," together with a trademarked "combination of words and symbols[,] ornamental feature, [or] a distinctive shape," as "something ... intended to remind the consumer of the brand." *Id.* at 609; accord *Advanced Res. Int'l, Inc. v. Tri–Star Petroleum Co.*, 4 F.3d 327, 334 (4th Cir.1993) (same). It would be odd indeed to say that the trademarked name of a brand, product, or company constitutes a "trademarked slogan" merely because it "remind[s] the consumer of the brand." For under this definition, all house, product, or brand names would qualify as slogans. Thus, it seems clear that a "slogan" must be something, other than the house mark or product mark itself, that provides such a reminder.

252 F.3d at 619. Applying this principle, the court held that a lawsuit brought by Boss Manufacturing Group for infringement of the "BOSS" trademark did not allege "slogan" infringement within the meaning of an insurance policy similar to the Policies at issue in this case. *Id.* at 619–20. Likewise, because EnviroCare's allegations involve Plaintiffs' alleged infringement of the EnviroCare trademark, the allegations do not allege infringement of a "slogan." *See Interstate Bakeries Corp. v. OneBeacon Ins. Co.*, 773 F.Supp.2d 799, 816 (W.D.Mo. 2011) (underlying suit alleging that insured "infringed on the product mark 'Nature's Own' cannot be read as alleging infringement of a slogan").

The Eighth Circuit Court of Appeals recently dealt with this very issue. In *Selective Insurance Company of America v. Smart Candle, LLC*, 781 F.3d 983 (8th Cir. 2015), the court held that a suit alleging infringement of the trademarked name "Smart Candle" did not trigger the insurer's duty to defend against allegations of slogan infringement. The court found that the trademarked name of the company, "Smart Candle," on its own did not express a position, stand or goal, was not "attention getting," nor did the term "educate about the company's purported goal to promote a line of battery-operated candles as a safe, economical alternative to a real wax candle." *Id.* at 986. The court acknowledged that, in some circumstances, a trademark can also be a slogan. *Id.* The court, however, concluded that because the underlying litigation specifically claimed trademark and trade-name infringement based on Smart Candle's use of its trade name and did not refer to "Smart Candle" as a slogan, the insurance company had no duty to defend Smart Candle against a suit alleging slogan infringement. *Id.*

Plaintiffs rely heavily on two cases to support their contention that "EnviroCare" is a slogan which triggers Hartford's duty to defend against the underlying EnviroCare Action. In *Northern Virginia Funeral Choices v. Erie Insurance Company*, Case No. 163598, 2003 WL 1960687 (Va. Cir. Ct. Mar. 21, 2003) Old Town Funeral Choices ("Old Town") filed suit against Mr. Harman and Northern Virginia Funeral Choices, Inc. ("Northern Virginia") requesting injunctive relief and damages for alleged trademark infringement and common law unfair competition. 2003 WL 1960687 at *1. The suit alleged that Mr. Harman formed a business which competed with Old Town and which incorporated the "funeral choices" label originated by the owners of Old Town. *Id.* The injury alleged in the underlying case was one for service mark or trademark infringement regarding the use of the term "funeral choices." *Id.* at *2.

Northern Virginia made a demand on its insurer, Erie Insurance Company ("Erie"), to defend and indemnify the litigation filed by Old Town, which Erie rejected. Northern Virginia eventually filed suit seeking to recover the cost of defense and the amount of the judgment. *Id.* at \*1. The court framed the issue as whether service mark or trademark infringement constituted an "advertising injury." The policy defined "advertising injury" as including injury arising out of "misappropriation of advertising ideas or style of doing business" or "infringement of copyright, title or slogan." *Id.* at \*2. Erie's position was that trademark and trade dress infringement were such common and distinct categories of actionable conduct that had the insurer intended to provide coverage for such liability, the insurer would have referred to it by name. *Id.* In rejecting the line of cases relied upon by Erie, the court suggested several bases for its conclusion that the claims were covered. First, the court concluded that the terms "infringement of copyright, title or slogan" were broad enough to encompass a claim of trademark infringement. As an alternative basis for its decision, the court concluded that the policy's failure to mention the term "trademark infringement," was an ambiguity which had to be interpreted against the insurer. Finally, the court concluded its decision could be supported because one's mark and name are an integral part of an entity's style of doing business. Thus, "infringement of trademark" is a misappropriation of the style of doing business, a category of conduct for which the policy explicitly provided coverage. *Id.* at \*2–3.

While the *Northern Virginia Funeral Choices* is the only Virginia state court case that addresses similar policy language, the case does not specify whether the label "funeral services" constituted "misappropriation of advertising ideas or style of doing business" or "infringement of copyright, title or slogan." Thus, this case does not support the key issue in dispute for potential

coverage under offense (g): whether the trademarked term "EnviroCare" constitutes a slogan, and specifically whether the EnviroCare Action asserted allegations for slogan infringement.

Plaintiff also cites to *Travelers Indemnity Co. of Connecticut v. Sterling Wholesale, LLC*, No. 2:12-CV-156, 2013 WL 3816736 (E.D. Va. July 19, 2013) as an example of how conduct at issue in a trademark infringement suit can be found to "fall within the ambit of" slogan infringement. *Id.* at *7; Doc. 9 at 15. In *Sterling Wholesale*, the court, in determining whether a duty to defend existed, had to decide whether the underlying complaint alleged conduct that occurred in the course of "advertising" by the insured. The court found, in part, that a complaint alleging counterfeit repackaging of certain medical supplies produced abroad so that the supplies looked like official Johnson & Johnson products could constitute as trademark infringement. *Id.* at *6. Relying on *Northern Virginia Funeral Choices*, the court found that the claim for trademark infringement fell within the ambit of "infringement of copyright, title or slogan." *Id.* at *7. The court noted that the underlying complaint "contains no specific allegations of advertising activity," and was "silent as to the details of any promotional activities," but nevertheless relied on the fact that the complaint "expressly, albeit summarily, alleges that the [insured] engaged 'in commercial advertising or promotion.'" *Id.* at *8. The court further held that "a trademarked term may in some circumstances also constitute a slogan, the infringement of which may trigger an insurer's duty to defend under a policy affording advertising injury." *Id.* at *8.

The *Sterling Wholesale* case based its holding on three factors, none of which are present here. First, the complaint in *Sterling Wholesale* expressly alleged the use of a "slogan." *Id.* at *6 ("The underlying complaint alleges generally that the *LifeScan* defendants . . . 'used a slogan, trade dress, word, term, name, symbol, or device . . . in commercial advertising or promotion.'").

EnviroCare's complaint does not. Second, the complaint alleged infringement of a number of listed trademarks, and the court found "[i]t is not clear from the allegations of the underlying *LifeScan* complaint that . . . none of the enumerated trademarked terms might also constitute a slogan, for which advertising injury coverage may be available." *Id.* at *7. EnviroCare alleges infringement of a single trademarked name and does not allege infringement of any slogan involving that name. Third, the plaintiff in *Sterling Wholesale* had not identified which packaging materials were counterfeited, so the court found it "reasonable to infer that this counterfeit packaging also included any slogans or copyrighted material that may have been displayed on the genuine article." *Id.* Here, no such inference is possible: EnviroCare clearly alleges infringement of a single trademarked name, "EnviroCare," and does not allege that the name was used in any slogan. *See* Doc. 4-3 ¶¶ 9, 13, 15, 19, 27, 31.

The remaining cases that Plaintiffs cite involve the use of promotional phrases, not product or brand names as such. *See Cincinnati Ins. Co. v. Zen Design Grp., Ltd.,* 329 F.3d 546, 556 (6th Cir. 2003)(distinguishing trademarked product name "SAPPHIRE" from catch phrase, "The Wearable Light," which was used as a tag line to promote it); *Ultra Coachbuilders, Inc. v. Gen. Sec. Ins. Co.,* No. 02-cv-675(LLS), 2002 WL 31528474, at *3 (S.D.N.Y. July 15, 2002) ("While the phrase 'Quality Vehicle Modifier' is the descriptive name of a service program, Ford also claims it uses the phrase to promote both the program itself and use of its other products, Ford vehicles, to limousine converters.").

Here, the trademarked term "EnviroCare" is not a distinctive cry, catchword or catch phrase. It is simply the trademarked name of the company, used for product recognition. The EniviroCare Action alleges that Plaintiffs infringed on EnviroCare's trademark by selling non-EnviroCare products using the EnviroCare trademark. Plaintiffs request that the Court read the

complaint to include a claim for slogan infringement, but there are simply no allegations that explicitly or implicitly refer to "EnviroCare" as a slogan, or make allegations regarding the misuse of a slogan. Because there are no allegations regarding the misuse of a slogan, the Court finds that Hartford does not owe a duty to defend under offense (g) of the Policies.

Accordingly, the Court holds that Hartford does not owe a duty to defend against the EnviroCare Action.[8]

## IV. CONCLUSION

In summary, the Court holds that Hartford does not owe a duty to defend Plaintiffs against underlying EnviroCare Action. The Court finds that the alleged conduct in the underlying EnviroCare Action does not constitute an offense enumerated by the Policies giving rise to coverage of an advertising injury. First, the Court finds that Plaintiffs' conduct, as alleged in the EnviroCare Action, does not constitute "publication of material that disparages EnviroCare's products." Therefore, Hartford does not owe a duty to defend pursuant to offense (d) of the Policies. Second, the Court finds that the trademarked term "EnviroCare" is not a slogan, and the EnviroCare Action does not contain allegations of slogan infringement. Thus, Hartford does not owe a duty to defend under offense (g) of the policies.

---

[8] The Court has found that the EnviroCare Action does not allege any "personal and advertising injury" as defined by the Policies. Therefore, the Court need not address the issue of whether the Intellectual Property Exclusion bars coverage.

Accordingly, **IT IS HEREBY ORDERED** that Defendant's Motion to Dismiss Under Rule 12(b)(6) or, In the Alternative, For Summary Judgment (Doc. 11) is **GRANTED** and Plaintiffs' Motion for Partial Summary Judgment (Doc. 5) is **DENIED**.

**IT IS SO ORDERED**.

ENTERED this $\underline{3}$ day of June, 2015.

Alexandria, Virginia
6/   / 2015

_____/s/_____
James C. Cacheris
United States District Judge